IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | AMENDED OPINION[1] |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20090999-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (February 24, 2012) |
| Anthony David Milligan, | ) | |
| | ) | 2012 UT App 47 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 071907398
The Honorable Randall N. Skanchy

Attorneys:    Ronald Fujino, Salt Lake City, for Appellant
              Mark L. Shurtleff and Karen A. Klucznik, Salt Lake City, for Appellee

-----

Before Judges Davis, Thorne, and Christiansen.

DAVIS, Presiding Judge:

¶1     Anthony David Milligan appeals his convictions for murder, a first-degree felony, *see* Utah Code Ann. § 76-5-203(3) (Supp. 2011),[2] and attempted murder, a second-degree felony, *see id.* § 76-4-101 (2008); *id.* § 76-4-102(2) (2003) (current version at *id.* § 76-4-102(1)(b)-(c) (2008)); *id.* § 76-5-203(3) (Supp. 2011).  We affirm in part and reverse and remand in part.

---

1.  This Amended Opinion replaces the Opinion in Case No. 20090999-CA issued on November 10, 2011.

2.  Where there have been no substantive amendments that are relevant under the facts of this case, we cite the current version of the Utah Code for the reader's convenience.

# BACKGROUND

¶2      On July 3, 2006, Milligan attended a party where gang members were present. Several people got into fights, and many of the people at the party were armed. One woman at the party called her boyfriend, Tevita Vaenuku, and told him that her "sisters were getting jumped." Vaenuku and several friends, including Kyle Durr, all of whom were unarmed, immediately went to the apartment where the party was being held. When these men arrived, Milligan and his co-defendant, Marco Heimuli, "ran out of the house and started blasting" their guns at them. The men in Vaenuku's group ran away, but Durr was shot in the arm, and Vaenuku was shot in the chest and died at the scene.

¶3      At trial, several witnesses testified about the events on the night of the party and statements Milligan had made to them about his actions. Defense counsel anticipated that one particular witness, testifying for the State, might tell the jury that a tattoo of a crown on Milligan's head suggested that he had committed murder. When defense counsel raised the concern, the trial court ruled, "It's more prejudicial . . . than probative," and concluded that the State could not ask about it. Although the State did not ask the witness about the tattoo during direct examination, the witness volunteered that Milligan "told [him] that he didn't think anybody should have a crown on their head unless they killed six people." The same witness also testified that Milligan told him he had shot Vaenuku. Milligan moved for a mistrial, arguing that the statement about the tattoo ensured his conviction because Milligan "ha[d] a crown tattooed on his head and . . . had throughout the proceedings." The trial court denied the motion, explaining,

> I'm not certain after having listened to all of the testimony that's come from [the witness] just how prejudicial that actually is in the context of . . . [Milligan's admission to the witness of] having killed this individual. So how much more prejudicial could any additional information be beyond your client's own statement of having shot this man? . . . [The statement about the tattoo] really seems to be fairly meaningless.

Ultimately, the jury convicted Milligan of both murder and attempted murder. It also determined, in a special verdict, that both crimes had been committed "by use of a dangerous weapon."

¶4    At sentencing, the trial court discussed the minimum mandatory sentences for Milligan's crimes. The trial court asked counsel to "walk [the court] through" the potential sentences for the crimes with the enhancements. The State's attorney represented that with the one-year dangerous weapon enhancements on each crime, *see* Utah Code Ann. § 76-3-203.8(2)(a)(i) (2008), the minimum sentence for the first-degree murder charge was six years to life and the minimum sentence for the second-degree attempted murder charge was two to fifteen years. The trial court imposed the minimum sentence for each crime and stated that the sentences would run consecutively. However, after trial, the State filed a Motion to Correct an Illegal Sentence, which pointed out that the legislature had amended the Utah Code effective May 2006, two months before the July 2006 shooting, to impose a new minimum mandatory sentence of fifteen years to life in prison for first-degree murder. *See id.* § 76-5-203(3) & amend. notes (2008 & Supp. 2011). Without further hearing, the trial court amended the sentence accordingly and once again ordered that the sentences be served consecutively. Milligan appeals.

## ISSUES AND STANDARDS OF REVIEW

¶5    First, Milligan argues that the trial court erred by refusing to grant his motion for a mistrial. "[O]nce a district court has exercised its discretion and denied a motion for a mistrial, we will not reverse the court's decision unless it is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial." *State v. Allen*, 2005 UT 11, ¶ 39, 108 P.3d 730 (internal quotation marks omitted).

¶6    Second, Milligan argues that the trial court committed plain error by amending his sentence without permitting him to defend himself at a new hearing and that his counsel performed ineffectively by failing to object to the trial court's error. "To prevail under plain error review, a defendant must demonstrate three elements": (1) that an error occurred, (2) that "the error should have been obvious to the trial court," and (3) "that there is a reasonable likelihood" that the outcome would have been more favorable to the defendant in the absence of the error. *State v. King*, 2006 UT 3, ¶ 21, 131 P.3d 202 (internal quotation marks omitted). "To establish ineffective assistance of counsel, [a defendant] must meet the heavy burden of showing that (1) trial counsel rendered deficient performance which fell below an objective standard of reasonable professional judgment, and (2) counsel's deficient performance prejudiced [the defendant]." *State v. Chacon*, 962 P.2d 48, 50 (Utah 1998).

ANALYSIS

## I. Motion for Mistrial

¶7     First, Milligan argues that the trial court should have granted his motion for a mistrial because the witness improperly referred to Milligan's gang-related tattoo at trial.  Milligan argues that the witness's reference to his crown tattoo and its purported meaning were highly prejudicial and precluded him from receiving a fair trial.  However, "a mistrial is not required where an improper statement is not intentionally elicited, is made in passing, and is relatively innocuous in light of all the testimony presented."  *Allen*, 2005 UT 11, ¶ 40.  Furthermore, in order to obtain reversal, the "defendant must make some showing that the verdict was substantially influenced by the challenged testimony."  *State v. Butterfield*, 2001 UT 59, ¶ 47, 27 P.3d 1133 (emphasis and internal quotation marks omitted).

¶8     We agree with Milligan that the witness's statement regarding Milligan's tattoo was potentially prejudicial and inflammatory[3] and might have warranted a new trial under other circumstances.  *See State v. Duran*, 2011 UT App 254, ¶ 33, 688 Utah Adv. Rep. 6 ("[T]he introduction of [excluded] evidence can be grounds for a new trial in some instances . . . .").  However, under the circumstances of this case, "we are not convinced that the trial court exceeded its discretion in denying [Milligan]'s motion for a new trial."  *See id.*  The testimony was not intentionally elicited by the State and was a passing comment by the State's witness.  *See generally Allen*, 2005 UT 11, ¶ 40.  Most significantly, the statement was "relatively innocuous in light of all the testimony presented."  *See id.*; *cf. Butterfield*, 2001 UT 59, ¶ 47 (rejecting the defendant's argument that a witness's reference to his criminal history was prejudicial because, given significant additional evidence of his guilt, the defendant "failed to show that there [was] a substantial likelihood that the jury would have found him not guilty had the improper statement not been made"); *State v. Wach*, 2001 UT 35, ¶ 46, 24 P.3d 948 (stating that the victim's improper remark that she wore a security alarm around the defendant was innocuous "given the totality of the evidence against" the defendant, such as the victim's recounting of his violence toward her); *Duran*, 2011 UT App 254, ¶ 38 (concluding that it was unlikely that the jury's verdict against the defendant was based on a witness's improper statement about his criminal history where "the evidence against [the defendant] on the count of which he was convicted was strong").

---

[3]The trial court acknowledged as much when it excluded evidence relating to the tattoo prior to trial.

¶9 At trial, the State presented strong evidence of Milligan's guilt. The witness who testified about Milligan's tattoo also testified that Milligan had told him "he was the one that shot the guy" and that Milligan had written him a note admitting that he "smoked that fool." Another witness testified that Milligan had told him that a fight with "some girls" had "escalated and [the girls] went and got some other rival gang members," and that "when [the rival gang members] showed up [Milligan] ran out of the house and started blasting at them with a gun." Several eyewitnesses present at the scene of the crime identified Milligan as one of the shooters. Additionally, forensic evidence tied Milligan to the gun used in the shootings. Given this overwhelming additional evidence from which the jury could have found Milligan guilty of the charged crimes, we are unconvinced that "the verdict was substantially influenced by the challenged testimony," *see Butterfield*, 2001 UT 59, ¶ 47 (emphasis and internal quotation marks omitted), such that Milligan "cannot be said to have had a fair trial," *see Allen*, 2005 UT 11, ¶ 39 (internal quotation marks omitted).

## II. Right to Appear and Defend

¶10 Next, Milligan asks that we remand this case for resentencing, arguing that the trial court erred by amending his sentence without providing him an opportunity to appear before the court and defend against the amendment. Although Milligan did not preserve this issue for appeal, he contests the amended sentence on grounds of plain error and ineffective assistance of counsel. *See generally State v. Weaver*, 2005 UT 49, ¶ 18, 122 P.3d 566 (listing claims based on plain error and ineffective assistance of counsel as exceptions to the preservation rule). However, to succeed on either ground, Milligan must demonstrate that he had a right to appear and defend against the corrected sentence. *See generally King*, 2006 UT 3, ¶ 21 ("To prevail under plain error review, a defendant must demonstrate . . . that an error did in fact occur." (internal quotation marks omitted)); *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

¶11 The Utah Constitution grants a criminal defendant "the right to appear and defend in person and by counsel." Utah Const. art. I, § 12; *see also* Utah Code Ann. § 77-18-1(7) (Supp. 2011) ("At the time of sentence, the court shall receive any testimony, evidence, or information the defendant or the prosecuting attorney desires to present concerning the appropriate sentence. This testimony, evidence, or information shall be presented in open court on the record and in the presence of the defendant."); Utah R. Crim. P. 22(a) ("Before imposing sentence the court shall afford the defendant an opportunity to make a statement and to present any information in mitigation of punishment, or to show any legal cause why sentence should not be imposed."). The

State does not dispute that the trial court amended the sentence without giving Milligan an opportunity to appear and defend against the amendment. However, the State maintains that the trial court was entitled to do so because Milligan had previously had the opportunity to appear and defend at the original sentencing hearing. We agree with the State that it was unnecessary for the trial court to permit Milligan to argue against the correction to the length of his sentence. However, Milligan should have been permitted to argue against consecutive sentencing in light of his significantly increased minimum sentence.

¶12    Utah courts have yet to consider the question of whether the right to appear and defend applies when a court considers a motion to correct an illegal sentence. Thus, we cannot conclude that any error on the part of the trial court was sufficiently obvious so as to constitute plain error. *See generally State v. Dean*, 2004 UT 63, ¶ 16, 95 P.3d 276 ("To establish [for purposes of plain error review] that the error should have been obvious to the trial court, [a defendant] must show that the law governing the error was clear at the time the alleged error was made."). Nevertheless, because we determine that Milligan was entitled to appear and defend against consecutive sentencing, we conclude that Milligan's counsel performed ineffectively in failing to request a hearing.

¶13    Rule 22(e) of the Utah Rules of Criminal Procedure permits trial courts to "correct an illegal sentence . . . at any time." Utah R. Crim. P. 22(e). Rule 35(a) of the Federal Rules of Criminal Procedure, which also relates to the correction of illegal sentences, *see* Fed. R. Crim. P. 35(a), is supplemented by another provision contained in rule 43(b) of the Federal Rules of Criminal Procedure, which specifically states, "A defendant need not be present . . . [when t]he proceeding involves the correction or reduction of sentence under [r]ule 35 . . . ."[4] *Id*. R. 43(b). While there is no counterpart to rule 43(b) in the Utah Rules of Criminal Procedure, we find it reasonable to apply such a rule to our cases in light of the rationale behind the right to appear and defend and our supreme court's analysis of that right in the context of correcting clerical errors.

¶14    When courts in other jurisdictions have discussed the right of a defendant to appear and defend when the trial court considers a motion to correct an illegal sentence,

---

[4]An earlier version of this rule provided, like our rule 22(e), that "[t]he court may correct an illegal sentence at any time." *See* Fed. R. Crim. P. 35(a) amend. notes. Although the current version of the rule provides that such corrections may only be made "[w]ithin 14 days after sentencing," *see id*. R. 35(a), this change does not affect the applicability of rule 43(b) to correction of illegal sentences.

those courts have relied not only on rule 43(b) but also on the rationale behind the right to appear and defend:

> [T]he presence-at-sentencing . . . requirement's constitutional base and rationale[ is] to ensure that at sentencing—a critical stage of the proceedings against the accused—the defendant has an opportunity to challenge the accuracy of information the sentencing judge may rely on, to argue about its reliability and the weight the information should be given, and to present any evidence in mitigation he may have. For an initial sentencing, or even a resentencing where an entire sentencing package has been vacated on appeal, a hearing at which the defendant is present with counsel will generally be necessary to accomplish this purpose. But in the context of . . . [a modification based on] the [il]legality of the original sentence, this necessary process has already occurred.

*United States v. Jackson*, 923 F.2d 1494, 1496-97 (11th Cir. 1991) (citations omitted) (determining that "there is no general right to be present and address the court when a sentence is modified"). Thus, where an illegal sentence may be corrected without any legal analysis or further exercise of judicial discretion, and the defendant has already been afforded an opportunity to appear and defend in the original sentencing hearing, little if any purpose is served by holding yet another hearing prior to amending the sentencing order. *See United States v. Connolly*, 618 F.2d 553, 556 (9th Cir. 1980) (holding that the correction of an illegal sentence "does not require the presence of a defendant when there is no disputed issue of fact" before the court because "[n]othing [a] defendant could say on his own behalf" under such circumstances "would aid the trial court in modifying and correcting the sentence"). On the other hand, where the resentencing involves more than a mere correction and a defendant's argument may influence the outcome, the defendant should be allowed an opportunity to appear before the court and defend against the amendment. *See Kerns v. United States*, 551 A.2d 1336, 1337-38 (D.C. Ct. App. 1989) (per curiam) (holding that where a case was remanded for resentencing and "the legal effect of [the appellate court's] holding [was] that appellant must be resentenced and not merely that his original minimum sentence . . . be reduced," the appellant was entitled to appear and defend because there was an argument to be made on remand that a different or lesser sentence should be imposed).

¶15 Our supreme court's analysis of the right to appear and defend in the context of corrections for clerical errors supports such a rule. The court has held that "[t]he right to presence and allocution does not apply when a court considers a motion to correct a clerical error . . . so long as the [original sentencing] hearing was held in [defendant's] presence and defendant had an opportunity to speak." *State v. Rodrigues*, 2009 UT 62, ¶ 40, 218 P.3d 610 (third alteration in original) (internal quotation marks omitted). In reaching this conclusion, the court emphasized the fact that a clerical error is not "the deliberate result of judicial reasoning and decision making," *id.* ¶ 28; the correction of a clerical error merely brings the judgment into conformity with the trial court's stated intent, *see id.* ¶ 15. *See State v. Lorrah*, 761 P.2d 1388, 1389 (Utah 1988) (per curiam).[5]

¶16 Similarly, the trial court's inadvertent imposition of a sentence shorter than the statutory minimum in this case was not the result of the trial court's "reasoning and decision making," *see Rodrigues*, 2009 UT 62, ¶ 26, but rather resulted from the trial court's misunderstanding, arising in part from counsel's error, of the correct minimum sentence for first-degree murder, *cf. id.* ¶¶ 25-28 (holding that where it was clear that the trial court intended to order restitution in accordance with the defendant's plea agreement, a calculation of the amount of restitution that was contrary to the plea agreement was a clerical error rather than a judicial error because it "resulted from a miscalculation and subsequent misstatement by the State" rather than "the court's judicial determination"). "As soon as the court was advised of the illegality of [Milligan]'s sentence, by reason of its failure to follow the [statute], it was its duty to

---

[5]Dicta in the supreme court's decision of *State v. Lorrah*, 761 P.2d 1388 (Utah 1988) (per curiam), also suggests a similarity between the treatment of clerical errors and illegal sentences. In *Lorrah*, the trial court's order mistakenly stated that the defendant's sentence was "not to exceed [ten] years," when it intended to order a "minimum mandatory term" of ten years. *See id.* at 1389. Because it was clear from the discussion at sentencing that the trial court intended to order the minimum mandatory term, and the written order simply failed to reflect that intention, the supreme court concluded that the mistake was a clerical error. *See id.* at 1389-90. However, in concluding that the defendant did not have the right to appear and defend before the clerical error was corrected, the court appeared to suggest that it would have reached that conclusion even if the trial court's intent had been to impose a sentence "not to exceed ten years" because "that sentence could not have stood in the face of the [statutory] mandate . . . calling for minimum mandatory terms of five, ten, or fifteen years and which may be for life" and "the court had the power to correct 'an[] illegal sentence . . . at any time.'" *Id.* at 1390 (quoting Utah R. Crim. P. 22(e)).

comply with the statute." *See Connolly*, 618 F.2d at 556; *see also* Utah R. Crim. P. 22(e) ("The court may correct an illegal sentence . . . at any time."). Because modification of the length of Milligan's sentence was "mandatory by statute and [the] minimum mandatory sentence [was] given," nothing Milligan could have said if given the opportunity to appear and defend could have altered that aspect of the sentence. *See Connolly*, 618 F.2d at 556 (emphasis omitted).

¶17 Nevertheless, Milligan maintains that his attorney could have argued against the imposition of consecutive sentences under the amended sentence and that his "counsel was ineffective for not objecting to the trial court's decision to sentence . . . Milligan in his absence." We agree. We cannot see how failing to object could have been a strategic decision. *See generally State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993) ("[I]f the challenged act or omission might be considered sound trial strategy, we will not find that it demonstrates inadequacy of counsel."). And although the trial court originally ordered that the sentence run consecutively with Milligan's sentence for the second-degree felony and with other sentences he was already serving, there is a reasonable probability that the trial court would have reached a different conclusion on this discretionary issue had it known that the mandatory minimum sentence (with the dangerous weapon enhancement) was sixteen years to life rather than six years to life. *See generally State v. Martinez*, 2001 UT 12, ¶ 17, 26 P.3d 203 ("In order to satisfy the prejudice requirement, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (alteration in original) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984))). If given the opportunity, we think it is possible that Milligan could have convinced the court to order that the amended sentence be served concurrently with his other sentences. We must therefore remand for resentencing on the consecutive/concurrent sentencing question.

CONCLUSION

¶18 We conclude that the trial court did not exceed its discretion by denying Milligan's motion for a mistrial because the overwhelming evidence presented at trial convinces us that the result would have been the same even if the witness had not mentioned Milligan's tattoo. Furthermore, because Milligan had an opportunity to appear and defend at the sentencing hearing and the amendment of the length of his sentence did not involve any judicial reasoning or decision making, we conclude that Milligan was not entitled to appear and defend against that aspect of the sentence, which was mandated by statute. However, because the trial court's imposition of

consecutive sentences did involve an exercise of discretion, Milligan should have been permitted to argue against consecutive sentencing in light of the amendment to the minimum length of his sentence. Thus, we reverse the trial court's order that the sentences run consecutively and remand for the narrow purpose of giving Milligan an opportunity to defend against that aspect of the amended sentence. We affirm Milligan's conviction and all other aspects of the amended sentence.

_____
James Z. Davis,
Presiding Judge

-----

¶19    WE CONCUR:

_____
William A. Thorne Jr., Judge

_____
Michele M. Christiansen, Judge