IN THE UTAH COURT OF APPEALS

----ooOoo----

State of Utah,                          )        MEMORANDUM DECISION
                                        )
        Plaintiff and Appellee,         )        Case No. 20091039-CA
                                        )
v.                                      )             F I L E D
                                        )          (March 15, 2012)
Marco Heimuli,                          )
                                        )          ┌─────────────────┐
        Defendant and Appellant.        )          │   2012 UT App 69 │
                                                   └─────────────────┘

-----

Third District, Salt Lake Department, 071902588
The Honorable Randall N. Skanchy

Attorneys:     Debra M. Nelson, Salt Lake City, for Appellant
               Mark L. Shurtleff and Karen A. Klucznik, Salt Lake City, for Appellee

-----

Before Judges Davis, Thorne, and Roth.

DAVIS, Judge:

¶1      Marco Heimuli appeals his convictions of murder, a first degree felony, *see* Utah
Code Ann. § 76-5-203(2)-(3) (Supp. 2011), and attempted murder, a second degree
felony, *see id.* § 76-4-101 (2008); *id.* § 76-4-102(2) (2003) (current version at *id.* § 76-4-
102(1)(b)-(c) (2008)).  We affirm.

¶2      Heimuli was convicted, along with his co-defendant, Anthony David Milligan,
for shooting one man and killing another in July 2006.  *See State v. Milligan*, 2011 UT
App 390, ¶ 2, 265 P.3d 132 (reciting additional background relating to the shooting).  At
trial, the State presented evidence that following the shooting, Heimuli fled from the
scene, changed his appearance, and left Utah.  A witness who assisted Heimuli in

fleeing the state testified that Heimuli told him that he had just "shot two guys in the face" and "need[ed] to go, get away." The State also introduced the testimony of a number of witnesses who identified Heimuli as one of the shooters. However, the reliability of the witnesses was questionable because the shooting occurred at night when visibility was limited, most of the witnesses were under the influence of drugs and alcohol at the time, and the witnesses' stories were inconsistent and may have been influenced by discussions with other witnesses.

¶3    First, Heimuli argues that he is entitled to a new trial because his counsel performed ineffectively by failing to introduce expert testimony regarding the reliability of eyewitness testimony. In order to support an ineffective assistance of counsel claim, a defendant must demonstrate, first, that "counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment," and, second, that "counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

¶4    In analyzing the deficient performance prong, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Furthermore, because an analysis regarding the effectiveness of counsel must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," *see id.*, we must consider the law in effect at the time of trial in evaluating whether counsel performed deficiently, *see State v. Dunn*, 850 P.2d 1201, 1228 (Utah 1993).

¶5    At the time of Heimuli's trial in September 2009, Utah trial courts routinely employed "a de facto presumption against eyewitness expert testimony." *State v. Clopten*, 2009 UT 84, ¶ 13, 223 P.3d 1103. This presumption arose in response to case law discouraging the use of such testimony,[1] as well as the appellate courts' long

---

[1]Although the supreme court has explained that it did not intend to completely preclude the use of eyewitness expert testimony, *see State v. Clopten*, 2009 UT 84, ¶ 12, 223 P.3d 1103, the dilemma created by the fact that such testimony was generally seen as either too specific, so as to "cause the jury to abdicate its role as fact finder," or too

(continued...)

history of declining to reverse convictions based on failure to admit expert testimony relating to eyewitness identification. *See id.* ¶¶ 11, 13. However, three months after Heimuli's trial, in the case of *State v. Clopten*, 2009 UT 84, 223 P.3d 1103, the Utah Supreme Court reversed this practice, holding that "the testimony of a qualified expert regarding factors that have been shown to contribute to inaccurate eyewitness identifications should be admitted whenever it meets the requirements of rule 702 of the Utah Rules of Evidence." *See id.* ¶ 30. *See generally* Utah R. Evid. 702 (setting forth the requirements for admission of expert testimony).

¶6     The State argues that counsel's decision not to attempt to introduce eyewitness expert testimony could not be considered deficient performance because under the law at the time of Heimuli's trial, the de facto presumption against admission of such testimony was still in force. Though Heimuli acknowledges the state of the law at the time of trial, including the "seeming reinforcement [of the presumption] by appellate courts," he contends that the presumption "did not relieve counsel of his responsibility to request an eyewitness identification expert" in light of scientific evidence demonstrating that "cross-examination and cautionary instructions alone were an insufficient safeguard against mistaken identifications." We disagree with Heimuli's assertion that counsel had an obligation to request that the trial court admit eyewitness expert testimony under the circumstances. The de facto presumption against such testimony, which enjoyed a long precedent prior to the supreme court's decision in *Clopten*, would have effectively foreclosed any effort counsel might have made to admit the testimony. The fact that counsel could have or even should have[2] been aware of the

---

[1](...continued)
general, so as to "constitute a lecture to the jury about how it should judge the evidence," led to the effective exclusion of such testimony in most cases. *See id.* ¶ 13 (internal quotation marks omitted).

[2]Heimuli cites case law discussing counsel's "duty to adequately investigate the underlying facts of the case," *State v. Lenkart*, 2011 UT 27, ¶ 27, 262 P.3d 1 (internal quotation marks omitted), and asserts that counsel performed deficiently by failing to look into "the uncontroverted research establishing expert testimony is necessary in cases like Heimuli's." Heimuli correctly points out that "failing to investigate because counsel does not think it will help does not constitute a strategic decision, but rather an abdication of advocacy." *See id.* ¶ 28 (internal quotation marks omitted). However, the

(continued...)

research Heimuli refers to does not alter the fact that our supreme court, prior to its decision in *Clopten*, had consistently upheld trial courts' exclusion of eyewitness expert testimony even in the face of such research. *See, e.g., State v. Maestas*, 2002 UT 123, ¶¶ 62-69, 63 P.3d 621 (Durrant, J., dissenting and concurring); *id.* ¶¶ 135-39 (Russon, J., concurring and dissenting); *State v. Hubbard*, 2002 UT 45, ¶¶ 14-20, 48 P.3d 953; *State v. Butterfield*, 2001 UT 59, ¶¶ 42-44, 27 P.3d 1133. Thus, regardless of the scientific research that may have supported admission, Heimuli's counsel did not perform below an objective standard of reasonableness by not pursuing admission of expert testimony. *See generally State v. Whittle*, 1999 UT 96, ¶ 34, 989 P.2d 52 ("[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." (alteration in original) (internal quotation marks omitted)).

¶7      In any case, we are not convinced that "the result of the proceeding would have been different," *see Strickland*, 466 U.S. at 694, had the jury been educated by an expert on the reliability of eyewitness testimony. Although eyewitness testimony comprised a large part of the State's case, the jury's verdict is also supported by evidence that Heimuli fled the state following the shooting and admitted to an acquaintance that he had "shot two guys in the face." It is unlikely, under these circumstances, that expert testimony would have sufficiently undermined the eyewitnesses' credibility[3] so as to have led the jury to have "a reasonable doubt respecting guilt," *see id.* at 695.

---

[2](...continued)
fact that counsel did not introduce eyewitness expert testimony—testimony that had been routinely rejected by our trial courts—does not demonstrate a lack of investigation. While the failure to investigate a possible avenue of defense may constitute ineffective assistance, the failure to actually employ such a defense, either for strategic reasons or because the defense would be futile, does not. An advocate's responsibility is not to present every possible defense but merely to investigate the facts in a manner adequate to "set[] the foundation for counsel's strategic decisions about how to build the best defense." *Id.* ¶ 27 (internal quotation marks omitted).

[3]In fact, as the State points out, some of the factors affecting eyewitness credibility actually strengthen the reliability of the witnesses, such as the fact that most of the witnesses were the same race as Heimuli and the fact that Heimuli is larger than an average man. *See generally Clopten*, 2009 UT 84, ¶ 32 n.22 (listing factors that affect eyewitness reliability).

¶8    Next, Heimuli argues that there was insufficient evidence to prove that he caused the victim's death. However, Heimuli failed to satisfy his marshaling burden because his brief merely lists the evidence presented at trial and then concludes, without any analysis, that the evidence was insufficient to support the verdict. *See generally Kimball v. Kimball*, 2009 UT App 233, ¶ 21, 217 P.3d 733 ("The marshaling requirement is not satisfied if parties just list all the evidence presented at trial . . . ."); *id.* ¶ 20 n.5 ("If there is some supportive evidence, once that evidence is marshaled it is the challenger's burden to show the 'fatal flaw' in that supportive evidence, and explain why the evidence is legally insufficient to support the [verdict]." (citation omitted)). To the extent that Heimuli's brief may be construed as providing any analysis, it focuses on his assertion that Heimuli could not be found guilty as a principal because it was impossible to determine whether the victim was killed by a bullet from his gun or Milligan's. But Heimuli was charged as a party, not a principal: he was specifically charged as a party in the information, the State explained at trial that both Milligan and Heimuli were being charged as parties because it was unknown which bullet killed the victim, and the jury instructions included an instruction on party liability.[4] Thus, even if Heimuli had appropriately marshaled the evidence, his assertion that the evidence was insufficient to show that his bullet killed the victim would not undermine the jury's verdict.[5]

---

[4]Heimuli asserts that "the jury instruction given to find [him] guilty of murder did not include the elements of party liability." However, Jury Instruction 36 tracks the party liability statute nearly word for word and was provided as a general instruction applicable to all the charges. *See generally* Utah Code Ann. § 76-2-202 (2008) ("Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct."). The fact that the language was not repeated specifically in the instruction that listed the elements of the murder charge does not negate the applicability of Instruction 36 to that charge, particularly in light of the fact that it was made apparent at trial that Heimuli was being charged as a party.

[5]Heimuli's last-minute assertion in his reply brief that "the evidence as marshaled by Heimuli in his opening brief also demonstrates the evidence was insufficient to convict Heimuli as a party" provides insufficient analysis of the

(continued...)

20091039-CA                                5

¶9   Because a de facto presumption against the admission of expert eyewitness testimony existed at the time of Heimuli's trial, his counsel did not perform deficiently by not requesting that the trial court admit such testimony.  And because the eyewitness testimony was corroborated by Heimuli's flight and his own statements, the lack of expert testimony was not prejudicial.  Furthermore, we reject Heimuli's claim regarding the sufficiency of the evidence because he was convicted as a party, rather than a principal, and because he did not adequately analyze the marshaled evidence.  We therefore affirm Heimuli's convictions.

_____
James Z. Davis, Judge

-----

¶10   WE CONCUR:

_____
William A. Thorne Jr., Judge

_____
Stephen L. Roth, Judge

---

[5](...continued)
marshaled evidence.  In any case, we do not generally consider arguments "raised for the first time in the reply brief."  *See Coleman v. Stevens*, 2000 UT 98, ¶ 9, 17 P.3d 1122.