**2015 UT App 23**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
THEODORE JAMES SAMUL,
Defendant and Appellant.

Opinion
No. 20121008-CA
Filed January 29, 2015

Third District Court, Salt Lake Department
The Honorable Judith S.H. Atherton
No. 021913406

John B. Plimpton and Kerri S. Priano, Attorneys
for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in
which JUDGES GREGORY K. ORME and J. FREDERIC VOROS JR.
concurred.[1]

BENCH, Senior Judge:

¶1      Theodore James Samul appeals from an amended sentence
and from the dismissal of his motion to withdraw his 2003 guilty
pleas. We affirm in part and reverse in part and remand.

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah R. Jud. Admin.
11-201(6).

BACKGROUND

¶2    Samul was charged with aggravated sexual assault and aggravated kidnapping based on allegations that he choked, bit, raped, and threatened to kill his sister after she asked him to drive her home from a family party. On March 24, 2003, he pleaded guilty to one count of attempted aggravated sexual assault and one count of attempted aggravated kidnapping. The written statement in support of the guilty pleas listed both crimes as first degree felonies, each carrying a prison term of three years to life. At a sentencing hearing on May 12, 2003, the prosecutor and defense counsel addressed the court. After defense counsel had highlighted facts in mitigation and argued in favor of concurrent sentences, the trial court asked Samul whether he had anything to add. Samul responded, "No. I think it's all been said." The trial court then stated that because Samul's crimes were "disturbing in a number of different ways," the court would "keep [him] in prison as long as [it] possibly [could] because . . . it's the only safe way to sentence [him] for [the] victim and for the community at large." The trial court sentenced Samul to two consecutive terms of three years to life in prison. In addition, the trial court ordered Samul to pay $2,094.68 in restitution. Samul did not appeal his sentences.

¶3    Nine years later, in 2012, Samul filed a pro se motion to correct the sentences pursuant to rules 22 and 11 of the Utah Rules of Criminal Procedure and section 77-13-6 of the Utah Code. In the motion, Samul asserted that the trial court imposed his sentences in violation of rule 22(c) of the Utah Rules of Criminal Procedure by failing to advise Samul of his right to appeal and the time period for doing so. Samul also asserted that the trial court violated rule 11(e) of the Utah Rules of Criminal Procedure by accepting Samul's guilty pleas without informing him of various rights. In addition, Samul moved to withdraw his guilty pleas and raised claims of ineffective assistance of counsel. Samul requested that the court set aside his sentences and resentence him. He also requested an evidentiary hearing on his motions, reimbursement of restitution, and merger of his convictions.

¶4     In its response to Samul's motion, the State argued that the motion to withdraw the guilty pleas was untimely and asked the court to dismiss it. However, the State urged the court to amend Samul's sentence on his attempted aggravated kidnapping conviction under rule 22(e) of the Utah Rules of Criminal Procedure. The State explained that the crime of attempted aggravated kidnapping is a second degree felony and that the trial court had sentenced Samul to three years to life, which, under the relevant statute, is a punishment reserved for attempt crimes that are first degree felonies. *See* Utah Code Ann. § 76-4-102(1) (LexisNexis Supp. 2014).[2] The State therefore agreed that Samul's sentence for attempted aggravated kidnapping was an illegal sentence that should be corrected to a term of one to fifteen years. *See id.* § 76-3-203(2) (LexisNexis 2012) (providing that a person convicted of a second degree felony may be sentenced to a term of not less than one year or more than fifteen years in prison). Thereafter, Samul filed a reply, a request for an award of all legal expenses and fees incurred in filing his pro se motion, and a request to submit for decision.

¶5     At a hearing on July 13, 2012, the prosecutor acknowledged that her office had encouraged the court to impose the original sentence on the attempted aggravated kidnapping conviction without having researched the appropriate sentence. The trial judge responded, "[W]e all should have known . . . that the sentence and the level of offense for the attempted aggravated kidnapping was in error." Samul's counsel[3] addressed the court and explained that Samul had "raised a myriad of issues . . . related to deprivation of rights" that he wanted to address. When the court asked whether counsel had anything further regarding the resentencing, defense counsel answered, "No . . . [but] we would

---

2. Where recent amendments to the Utah Code do not affect our analysis, we cite the current version of the Utah Code for the reader's convenience.

3. Samul filed his motion pro se but was later appointed counsel.

ask that nothing be done today, including the resentencing." The trial judge then stated that she was "anxious to go forward with the resentencing" and that she "want[ed] to correct this error as soon as possible." The judge explained that the Board of Pardons "certainly will take a look at the amended sentence," which "can make a differen[ce]" because "one to 15 years is substantially different from a three to life" sentence. Defense counsel again asked the judge to wait a couple of weeks to act.

¶6    After initially agreeing to postpone correcting the error, the trial court signed an amended sentence later that day. The court's order adjusted Samul's sentence on the attempted aggravated kidnapping conviction to a prison term of one to fifteen years. In all other respects, the amended sentence remained the same as the May 2003 sentence, with a three-years-to-life sentence on the attempted aggravated sexual assault conviction and an order that the sentences run consecutively.

¶7    At the rescheduled sentencing review hearing on August 31, 2012, defense counsel asked the court to set the matter over so that defense counsel could confer with the prosecutor regarding the issues of ineffective assistance of counsel, merger, and plea withdrawal. The following discussion of the amended sentence ensued:

> THE COURT: Let's see. So I amended the sentence, correct?
>
> DEFENDANT SAMUL: I objected to the amended sentence. I objected to all of that. You said that you were going to—you weren't going to rule on any matter until you could hear all the issues because I had so many issues that needed to be addressed.
>
> THE COURT: Uh-huh (affirmative).

DEFENDANT SAMUL: And you said you'd set the matter over, and it was supposed to be done [two weeks later], and it got continued until today.

THE COURT: I amended the sentence effect[ive] nunc pro tunc to May 12th of 2003, which doesn't—so it has been amended to reflect the correct sentence, which . . . I did to benefit Mr. Samul because he's been in custody for a long time. So the Board now has the correct sentence. . . .

. . . .

THE COURT: [There was an] error in the plea affidavit that designated [attempted aggravated kidnapping] as a three to life . . . first degree [felony] . . . as opposed to a second degree, one to fifteen. Clearly, that's of concern. I don't know what the remedy is. I mean, the immediate remedy is to correct it, which I did nunc pro tunc, which changes his position before the Board of Pardons. The other remedies you'll just have to educate me on. All right.

. . . .

DEFENDANT SAMUL: I'm unclear as to what happened because at the last hearing, . . . my understanding on leaving the courtroom was that nothing was going to happen until I came back the next time . . . . And now you're saying that you corrected the sentence or something already?

THE COURT: I corrected the sentence to be consistent with what you pled to. Let me . . . make sure you understand what this means and what nunc pro tunc means. I amended this effective May 12th of 2003. This changes—

DEFENDANT SAMUL: As it was then?

THE COURT:—considerably your position before the Board of Pardons. And the soonest I can do that I did, because it's to your benefit that I did that—clearly to your benefit. It's . . . a different looking case, and so the Board of Pardons, I felt, needed to have that information as soon as possible.

DEFENDANT SAMUL: Well, that's contrary to my understanding though because—

THE COURT: Okay. Well, that—

DEFENDANT SAMUL: —I have other issues.

THE COURT: It is what it is now.

DEFENDANT SAMUL: Right, but I have other issues.

THE COURT: You have—that's what your attorney is going to talk to you about.

[DEFENSE COUNSEL]: Let me talk to you in the holding cell.

THE COURT: That is fine. I think we're done.

[DEFENSE COUNSEL]: Thank you, Your Honor.

The trial court's minute entry for the hearing noted that it had "previously amended the sentence nunc pro tunc" and that it would take no further action that day.

¶8     On September 21, 2012, the trial court issued a written memorandum decision addressing the issues Samul had submitted

for decision. The trial court first explained the illegal sentence on Samul's attempted aggravated kidnapping conviction. The court indicated that Samul's sentence "is corrected to reflect the actual legally appropriate sentence for Attempted Aggravated Kidnapping," pursuant to rule 22(e) of the Utah Rules of Criminal Procedure. The trial court therefore "[ordered] that [Samul] serve an indeterminate term at the Utah State Prison of 1 to 15 years on Count II, to run consecutively to Count I." The court then turned to the remaining issues, ruling that it lacked jurisdiction to hear those challenges. The court explained that the "issue of ineffective assistance of counsel is an appellate issue or subject to a civil action in this court." The court then determined that the motions to set aside the convictions and to withdraw the guilty pleas were not timely and accordingly dismissed them. Samul appeals.[4]

ISSUES AND STANDARDS OF REVIEW

¶9     Samul first argues that the trial court violated rule 22(a) of the Utah Rules of Criminal Procedure and his right to allocution and due process when it corrected his illegal sentence. "The denial of the right to allocution is an issue of law that we review for correctness." *West Valley City v. Walljasper*, 2012 UT App 252, ¶ 6, 286 P.3d 948.

¶10    Next, Samul argues that the trial court erred in denying his motion to withdraw his guilty pleas. "In determining whether a motion to withdraw a guilty plea is timely and whether the trial court has jurisdiction to rule on that motion, we give no deference to the trial court's rulings but review them for correctness, as

---

4. In its brief, the State challenged this court's jurisdiction, arguing that Samul's notice of appeal was not timely filed. We ordered supplemental briefing on this jurisdictional issue after oral argument. In its supplemental briefing, the State withdrew its objection to this court's jurisdiction over the appeal.

questions of law." *State v. Smith*, 2012 UT App 247, ¶ 7, 286 P.3d 314.

¶11    Finally, Samul argues that the trial court erred in failing to rule on his claim that the trial court violated rule 22(c) of the Utah Rules of Criminal Procedure and on his requests for restitution reimbursement and legal fees. "Procedural issues present questions of law, which we review for correctness." *State v. Kragh*, 2011 UT App 108, ¶ 9, 255 P.3d 685.

## ANALYSIS

### I. Allocution

¶12    Samul contends that the trial court erred in correcting his sentence without affording him another opportunity to make a statement and introduce mitigating evidence. Samul argues that before amending his sentence, the trial court should have allowed him to present new information that may have resulted in concurrent sentences. The State counters that Samul was not entitled to allocute where the court corrected an illegal sentence to bring the sentence into compliance with the statutory mandate, where the correction reduced the sentence, and where Samul appeared and defended at the original sentencing hearing and had the opportunity for allocution. We agree with the State.

¶13    "In Utah, allocution is both a constitutional and statutory right." *State v. Udy*, 2012 UT App 244, ¶ 25, 286 P.3d 345. Rule 22(a) of the Utah Rules of Criminal Procedure "codifies the common-law right of allocution, allowing a defendant to make a statement in mitigation or explanation after conviction but before sentencing." *State v. Wanosik*, 2003 UT 46, ¶ 18, 79 P.3d 937. The rule provides, "Before imposing sentence, the court shall afford the defendant an opportunity to make a statement and to present any information in mitigation of punishment, or to show any legal cause why sentence should not be imposed." Utah R. Crim. P. 22(a); *see also* Utah Code

Ann. § 77-18-1(7) (LexisNexis Supp. 2014) ("At the time of sentence, the court shall receive any testimony, evidence, or information the defendant or the prosecuting attorney desires to present concerning the appropriate sentence. This testimony, evidence, or information shall be presented in open court on record and in the presence of the defendant.").

¶14   Samul asserts that a defendant has the right to allocute before a trial court corrects an illegal sentence under rule 22(e) of the Utah Rules of Criminal Procedure. Rule 22(e) states, "The court may correct an illegal sentence, or a sentence imposed in an illegal manner, at any time." Utah R. Crim. P. 22(e).

¶15   This court addressed whether a defendant has the right to appear and defend against a corrected sentence in *State v. Milligan*, 2012 UT App 47, 287 P.3d 1. In that case, Milligan was convicted of murder and attempted murder. *Id.* ¶ 1. During sentencing, the prosecutor represented that the minimum sentence was six years to life in prison for the murder charge and two to fifteen years for the attempted murder charge. *Id.* ¶ 4. The trial court imposed the minimum sentence for each crime and ordered that the sentences run consecutively. *Id.* Thereafter, the State filed a motion to correct an illegal sentence, pointing out that the applicable statute provided that the minimum mandatory sentence for murder was fifteen years to life in prison. *Id.* Without further proceedings, the trial court amended the sentence in accordance with the statute, thereby increasing the sentence, and the court once again ordered consecutive sentences. *Id.*

¶16   On appeal, Milligan argued that the trial court plainly erred by amending his sentence without providing him an opportunity to appear before the court and defend against the amendment, and that his trial counsel performed ineffectively by failing to object to the trial court's error. *Id.* ¶¶ 6, 10. As this court explained, "the trial court's inadvertent imposition of a sentence shorter than the statutory minimum . . . was not the result of the trial court's reasoning and decision making, but rather resulted from the trial

court's misunderstanding, arising in part from counsel's error, of the correct minimum sentence for first-degree murder." *Id.* ¶ 16 (citations and internal quotation marks omitted). "As soon as the court was advised of the illegality of [Milligan]'s sentence, by reason of its failure to follow the [statute], it was its duty to comply with the statute." *Id.* (alterations in original) (citation and internal quotation marks omitted). This court therefore held that "because Milligan had an opportunity to appear and defend at the sentencing hearing and the amendment of the length of his sentence did not involve any judicial reasoning or decision making," he was not entitled to appear and defend against the increase in the length of his sentence for murder. *Id.* ¶¶ 16, 18; *cf. State v. Rodrigues*, 2009 UT 62, ¶¶ 28, 40, 218 P.3d 610 (explaining that "[t]he right to presence and allocution does not apply when a court considers a motion to correct a clerical error" and that a clerical error is not "the deliberate result of judicial reasoning and decision making").

¶17 Nevertheless, this court agreed with Milligan that his counsel was constitutionally ineffective for not objecting to the trial court's decision to amend Milligan's sentence in his absence. *Milligan*, 2012 UT App 47, ¶ 17. The trial court originally ordered the sentence to run consecutively with Milligan's sentence for attempted murder and with other sentences he was serving. *Id.* But this court determined that "there [was] a reasonable probability that the trial court would have reached a different conclusion on this discretionary issue had it known that the mandatory minimum sentence (with [a one year] dangerous weapon enhancement) was sixteen years to life rather than six years to life." *Id.* Consequently, it was possible that Milligan could have convinced the trial court to order that the amended sentence be served concurrently with his other sentences. *Id.* This court therefore remanded for the "narrow purpose" of giving Milligan an opportunity to defend against the imposition of consecutive sentences. *Id.* ¶¶ 17–18.

¶18 Under the facts of the case before us, we are not persuaded that Samul was entitled to appear and defend before the trial court

amended his sentence. We reach this conclusion for several reasons. First, it is significant that the amended sentence resulted in a reduction of Samul's sentence. *See* Fed. R. Crim. P. 43(b) (providing that a defendant need not be present when the proceeding involves the correction or reduction of sentence); *see also Milligan*, 2012 UT App 47, ¶¶ 13–14 (applying rule 43(b) of the Federal Rules of Criminal Procedure in addressing whether a defendant has the right to appear and defend when the trial court considers a motion to correct an illegal sentence). The trial court's original sentence imposed a prison term of three years to life for Samul's attempted aggravated kidnapping conviction. Because the original sentence exceeded the statutorily authorized sentence for the crime, *see* Utah Code Ann. § 76-4-102(1) (LexisNexis Supp. 2014), there is no dispute that the original sentence was illegal. In 2012, the trial court amended Samul's sentence for this conviction to reflect the statutory sentence of one to fifteen years in prison. *See id.* § 76-3-203(2) (LexisNexis 2012); *see also State v. Telford*, 2002 UT 51, ¶ 5 n.1, 48 P.3d 228 (per curiam) ("[R]ule 22(e) may be employed to correct . . . a sentence beyond the authorized statutory range."). The amended sentence therefore involved a reduction of sentence.

¶19    Second, the trial court's amendment of the length of Samul's sentence for attempted aggravated kidnapping did not involve any judicial reasoning or decision making. *See Milligan*, 2012 UT App 47, ¶¶ 16, 18. Similar to *Milligan*, the trial court inadvertently imposed a sentence outside of the statutory scheme because of its "misunderstanding, arising in part from counsel's error, of the correct minimum sentence for" attempted aggravated kidnapping. *See id.* ¶ 16. The trial court's amendment of the attempted aggravated kidnapping sentence was not the result of the trial court's reasoning and decision making, because the trial court had a "duty to comply with the statute" once it was advised of the illegality of the sentence. *See id.* ¶¶ 16, 18 (citation and internal quotation marks omitted). Samul's sentence could therefore be corrected "without any legal analysis or further exercise of judicial discretion." *See id.* ¶ 14.

¶20 Third, Samul had already been given "an opportunity to make a statement and to present any information in mitigation of punishment, or to show any legal cause why sentence should not be imposed." *See* Utah R. Crim. P. 22(a). At the 2003 sentencing hearing, Samul's counsel urged the court to consider mitigating factors, including Samul's claimed remorse for his conduct, his efforts at rehabilitation, and his character and work ethic. After defense counsel and the prosecutor finished their statements, the trial court gave Samul an opportunity to speak before sentencing, thereby satisfying his right to allocute. Therefore Samul had "already been afforded an opportunity to appear and defend in the original sentencing hearing." *See State v. Milligan*, 2012 UT App 47, ¶ 14, 287 P.3d 1; *cf. Rodrigues*, 2009 UT 62, ¶¶ 28, 40–41 (permitting the correction of a clerical error in a sentence without further allocution where the defendant was present and had the opportunity to speak during an earlier sentencing hearing); *Milligan*, 2012 UT App 47, ¶ 15 n.5 (noting the "similarity between the treatment of clerical errors and illegal sentences"). Under these circumstances, Samul was not entitled to allocute before the trial court entered the amended sentence correcting the illegal sentence.

¶21 Samul nevertheless maintains that under *Milligan*, he should at least be given the opportunity to defend against the imposition of consecutive sentences. Although the decision to impose consecutive or concurrent sentences is "discretionary," this court will not reverse a trial court's amended order that includes consecutive sentences unless the defendant shows that there is a reasonable likelihood that the trial court would have reached a different conclusion had it known the correct statutory sentence.[5]

---

5. Although the *Milligan* court reversed the trial court's order that the sentences run consecutively and remanded for Milligan to appear and defend against this aspect of the amended sentence, *State v. Milligan*, 2012 UT App 47, ¶¶ 17–18, 287 P.3d 1, this court reached that conclusion in addressing Milligan's claim of

(continued...)

*See Milligan*, 2012 UT App 47, ¶¶ 17–18. Samul has not met his burden. In imposing the original sentence, the trial court explained that Samul's conduct was "disturbing in a number of different ways" and noted the violence Samul had inflicted on the victim was "extreme, psych[ologically and] physically." Based on these facts, the trial court expressed its intent to "keep [Samul] in prison as long as [it] possibly can." In light of the trial court's comments in imposing the original sentence, we are not persuaded that the trial court might have imposed concurrent sentences had it known that the statutory sentence for attempted aggravated kidnapping was *shorter* than the three years to life that it originally imposed.

¶22    In summary, Samul was not entitled to appear and defend against the amended sentence, because the amended sentence was a reduction, the amendment of the length of his sentence did not involve any judicial reasoning or decision making, and Samul appeared, defended, and allocuted at the original sentencing hearing. Furthermore, because we are not persuaded that Samul could have convinced the trial court to impose concurrent sentences, the trial court did not err in entering the amended sentence.

## II. Motion to Withdraw Guilty Pleas

¶23    Samul next contends that the trial court erred in ruling that his motion to withdraw his guilty pleas was untimely. Samul

---

5. (...continued)
ineffective assistance of counsel, *see id.* ¶ 17. Samul has not raised an ineffective assistance of counsel claim on appeal. *Milligan* is also distinguishable on the ground that this court determined that Milligan's arguments may have convinced the trial court to impose concurrent sentences because the trial court erroneously entered a sentence shorter than the mandatory minimum sentence. *Id.* In contrast, the trial court here erroneously entered a sentence longer than the statutory sentence for one of Samul's convictions. *See supra* ¶ 18.

argues that because the September 21, 2012 memorandum decision was the final sentencing order, his motion to withdraw his pleas, which was filed in April 2012, was timely. In contrast, the State argues that the correction of Samul's illegal sentence did not restart the time for withdrawing Samul's pleas and that his motion to withdraw was therefore untimely.

¶24    When Samul entered his pleas in 2003, the plea withdrawal statute allowed a defendant to file a motion to withdraw a guilty plea "within 30 days after the entry of the plea." *See* Utah Code Ann. § 77-13-6(2)(b) (Lexis 1999). Our supreme court interpreted this statute to mean that the thirty-day limit for filing a motion to withdraw a guilty plea begins to "run[] from the date of final disposition of the case at the district court." *State v. Ostler*, 2001 UT 68, ¶¶ 11, 13, 31 P.3d 528. If a motion to withdraw is untimely filed, we lack jurisdiction to consider it. *State v. Smith*, 2012 UT App 247, ¶ 8, 286 P.3d 314.[6]

---

6. By the time Samul was sentenced, the plea withdrawal statute had been amended to require a defendant to file a motion to withdraw a guilty plea only "before sentence is announced." Utah Code Ann. § 77-13-6(2)(b) (LexisNexis Supp. 2003). Samul asserts that the earlier version of the plea withdrawal statute applies in his case. The State does not challenge this assertion but claims that the various amendments to the plea withdrawal statute are irrelevant in this case. For purposes of our analysis, we assume without deciding that Samul is correct that the earlier version of the plea withdrawal statute applies. *See State v. Abeyta*, 852 P.2d 993, 995 (Utah 1993) (noting that an amendment to the plea withdrawal statute related specifically to the time for withdrawing a plea was "substantive, not procedural, . . . and may not be applied retroactively"); *State v. Walker*, 2013 UT App 198, ¶ 25, 308 P.3d 573 (holding that "the plea withdrawal statute affects substantive rights" and that the version in effect at the time the defendant entered his guilty plea governs his plea withdrawal motion).

¶25     Samul argues that under the plea withdrawal statute in effect at the time he entered his pleas, he had thirty days to file his motion to withdraw his pleas from September 21, 2012, the date the trial court entered the memorandum decision correcting his illegal sentence under rule 22(e) of the Utah Rules of Criminal Procedure. In other words, Samul asserts that the trial court's order correcting his sentence under rule 22(e) restarted the thirty-day period for Samul to withdraw his 2003 guilty pleas.

¶26     Rule 22(e) allows the court to "correct an illegal sentence, or a sentence imposed in an illegal manner, at any time." Utah R. Crim. P. 22(e). "A request to correct an illegal sentence under rule 22(e) presupposes a valid conviction. Therefore, issues concerning the validity of a conviction are not cognizable under rule 22(e)." *State v. Brooks*, 908 P.2d 856, 860 (Utah 1995) (citations omitted). In other words, the scope of rule 22(e) is narrow and the rule "cannot be used as a veiled attempt to challenge the underlying conviction by challenging the sentence." *State v. Candedo*, 2010 UT 32, ¶ 9, 232 P.3d 1008; *see also id.* ("[R]ule 22(e) claims must be narrowly circumscribed to prevent abuse." (citation and internal quotation marks omitted)). Consequently, "a successful motion under rule 22(e) may have the effect of undoing the sentence, but it will not vest the defendant with new opportunities to challenge his case in ways unrelated to sentencing." *Smith*, 2012 UT App 247, ¶ 10. Accordingly, "we will reject a claim purportedly brought via rule 22(e) that is, 'in reality, a second appeal from [the original] conviction.'" *Id.* (alteration in original) (quoting *State v. Wareham*, 801 P.2d 918, 920 (Utah 1990)).

¶27     Samul's argument that the correction of a sentence under rule 22(e) restarts the time period for moving to withdraw a guilty plea is foreclosed by this court's decision in *State v. Smith*, 2012 UT App 247, 286 P.3d 314. In that case, the defendant entered a guilty plea and later filed a motion to withdraw the plea. *Id.* ¶ 3. The trial court denied the motion and proceeded with sentencing. *Id.* A year after his conviction was affirmed on appeal, the defendant filed a motion under rule 22(e). *Id.* ¶¶ 4–5. In the motion, the defendant

alleged that his sentence was illegal because, among other things, his right to allocution was denied at sentencing. *Id.* ¶ 5. The trial court vacated the defendant's sentence after finding that the defendant had been denied the opportunity to speak on his own behalf. *Id.* ¶ 6. Before resentencing, the defendant again filed a motion to withdraw his guilty plea. *Id.* The court denied the motion for lack of jurisdiction and entered a new sentence. *Id.*

¶28    On appeal, the defendant in *Smith* made an argument identical to Samul's, namely, that the trial court erred in denying his motion to withdraw because his successful rule 22(e) motion restarted the thirty-day time period to move to withdraw a plea. *See id.* ¶¶ 7, 10. This court rejected that argument, ruling instead that the defendant's motion to withdraw was filed "far beyond the statutory window for filing a motion to withdraw a guilty plea." *Id.* ¶¶ 9–11. Furthermore, this court reasoned that the defendant's successful rule 22(e) motion did not "open[] the door for him to file an otherwise untimely motion to withdraw his guilty plea."[7] *Id.* ¶¶ 10–11 (citing *Grimmett v. State*, 2007 UT 11, ¶¶ 7–9, 25, 152 P.3d 306). This court therefore affirmed the trial court's determination that it lacked jurisdiction to consider the motion. *Id.* ¶ 9.

¶29    The same reasoning applies here. The trial court's correction of Samul's illegal sentence for attempted aggravated kidnapping did not restart the time period for him to move to withdraw his

_____

7. Samul attempts to distinguish *Smith* by arguing that the plea withdrawal statute was interpreted differently at the time the defendant in *Smith* pleaded guilty in 1997. He argues that the defendant in *Smith* was required to file his motion to withdraw within thirty days of the date of the plea colloquy and that the resentencing in that case "did not alter or renew the date of the plea colloquy." Because we determine that a successful rule 22(e) motion does not alter or renew the time period for filing a motion to withdraw a plea, *see supra* ¶¶ 26–28, we are not persuaded that any changes in the interpretation of the plea withdrawal statute defeat the application of *Smith* to the case before us.

two guilty pleas. The trial court's correction under rule 22(e) did not amend the sentence with respect to Samul's plea to attempted aggravated sexual assault. Samul's motion to withdraw that plea, filed nine years after the trial court entered his sentence for attempted aggravated sexual assault, was clearly untimely under the plea withdrawal statute. *See* Utah Code Ann. § 77-13-6(2)(b) (Lexis 1999); *State v. Ostler*, 2001 UT 68, ¶¶ 11, 13, 31 P.3d 528. Likewise, Samul's motion to withdraw his plea on the attempted aggravated kidnapping count was untimely filed. Contrary to Samul's claim, the trial court's correction under rule 22(e) of the sentence on that count did not give Samul "the opportunity to move to withdraw his guilty plea many years after the thirty-day deadline expired." *See Smith*, 2012 UT App 247, ¶¶ 10–11. The trial court therefore correctly ruled that it lacked jurisdiction to consider Samul's motion to withdraw his pleas. *See id.* ¶ 8. Accordingly, we affirm the trial court's dismissal of Samul's motion to withdraw his guilty pleas.

## III. Remaining Claims That the Trial Court Did Not Reach

¶30    Last, Samul argues that the trial court erred in failing to rule on all of the claims he presented for adjudication with his rule 22(e) motion, including his claim for restitution reimbursement, his claim for legal fees, and his claim that the trial court violated rule 22(c) of the Utah Rules of Criminal Procedure. Samul further contends that because his sentence was imposed in violation of rule 22(c), his sentences for both counts were imposed in an illegal *manner*. The State opposes Samul's arguments regarding restitution and legal fees, arguing that those claims are outside the scope of rule 22(e). The State, however, agrees with Samul that the trial court erred in failing to address his rule 22(c) claim and recognizes that we should remand the case to the trial court to evaluate the claim and assess a remedy if necessary.

¶31    Rule 22(c) states that "[f]ollowing imposition of sentence, the court shall advise the defendant of defendant's right to appeal and the time within which any appeal shall be filed." Utah R. Crim. P.

22(c)(1). The court's compliance with rule 22(c) "is the most reliable way to ensure that defendants are made aware of the important constitutional right to appeal a conviction or sentence." *State v. Kabor*, 2013 UT App 12, ¶ 13, 295 P.3d 193. Nevertheless, "evidence that the defendant was actually made aware of his right to appeal, despite the court's oversight [in failing to comply with rule 22(c)(1)], can support a conclusion that he was not unconstitutionally deprived of the right to appeal." *Id.* ¶ 14. But if neither the sentencing court nor the defendant's attorney properly informed the defendant of his right to appeal, the defendant has a "valid claim for reinstatement of that right." *Johnson v. State*, 2006 UT 21, ¶ 26, 134 P.3d 1133.

¶32    Under rule 4(f) of the Utah Rules of Appellate Procedure and the steps outlined in *Manning v. State*, 2005 UT 61, 122 P.3d 628, a defendant may file a motion in the trial court to reinstate the time frame for filing a direct appeal. *Id.* ¶ 31. For the court to grant such a motion, the defendant must prove, "based on facts in the record or determined through additional evidentiary hearings, that he has been unconstitutionally deprived, through no fault of his own, of his right to appeal." *Id.* A defendant may prove such circumstances if he demonstrates by a preponderance of the evidence that "the court or the defendant's attorney failed to properly advise defendant of the right to appeal," *id.* ¶¶ 31–32 (citing *State v. Hallett*, 856 P.2d 1060, 1061 (Utah 1993)), and that "had he been properly advised he would have filed an appeal," *State v. Collins*, 2014 UT 61, ¶ 2. If the defendant meets this burden, the court will determine that he has been unconstitutionally deprived of the right to appeal. *Manning*, 2005 UT 61, ¶ 32. "In such a case, the trial or sentencing court is directed to reinstate the appeal time frame if doing so is in the interest of fundamental fairness. The defendant must then file a notice of appeal within thirty days of the date the trial court issues its order." *Id.* Our supreme court has noted that this procedure is "not available to a defendant properly informed of his appellate rights who simply let[s] the matter rest, and then claim[s] that he did not waive his right to appeal." *Id.* ¶ 33

(alterations in original) (citation and internal quotation marks omitted).

¶33 Samul's pro se rule 22(e) motion to correct illegal sentences raised a claim under rule 22(c), arguing that the trial court failed to advise him of his right to appeal his sentence and the time period to file a notice of appeal. The trial court should have adjudicated the rule 22(c) claim that Samul raised in his rule 22(e) motion to correct illegal sentences. The parties agree that the transcript of the 2003 sentencing hearing does not include an advisement from the court regarding Samul's "right to appeal and the time within which any appeal shall be filed." *See* Utah R. Crim. P. 22(c)(1). The written statement in support of the guilty pleas does not indicate that Samul was otherwise informed of his right to appeal. On the contrary, Samul was given to understand that "if [he] were convicted by a jury or judge, [he] would have the right to appeal [his] conviction and sentence" and that he "underst[ood] that [he was] giving up [his] right to appeal [his] conviction if [he] plead[ed] guilty." Additionally, the transcript of the change of plea hearing is not in the record on appeal. The record in this case therefore does not contain "evidence that [Samul] was actually made aware of his right to appeal." *See Kabor*, 2013 UT App 12, ¶ 14. Because the trial court did not hold an evidentiary hearing to determine if Samul was properly advised of his right to appeal, *see Manning*, 2005 UT 61, ¶ 31, and because the trial court never ruled on Samul's rule 22(c) claim, we remand for additional proceedings on this claim.

¶34 Samul also asserts that the trial court erred in failing to rule on his claims for reimbursement for restitution and for the legal fees he incurred while preparing his pro se motion to correct illegal sentences. Although we agree with Samul that the trial court apparently never addressed these claims, we agree with the State that these claims are outside the scope of a rule 22(e) motion. Because neither claim "threaten[s] the validity of the sentence," *see State v. Candedo*, 2010 UT 32, ¶ 14, 232 P.3d 1008, we will not remand for a decision on those claims.

CONCLUSION

¶35    The trial court did not err in correcting Samul's illegal sentence for attempted aggravated kidnapping without first affording him an opportunity to appear and defend against the correction. Samul was present and had the opportunity to speak at the original sentencing hearing, and the trial court's amended sentence corrected Samul's sentence to the maximum allowed by law and resulted in a reduction of his overall sentence. Under these circumstances, Samul was not entitled to allocute again when the trial court corrected his illegal sentence. Furthermore, because the correction did not restart the time period for filing a motion to withdraw, the trial court correctly dismissed Samul's motion to withdraw his guilty pleas for lack of jurisdiction. However, the trial court erred in failing to adjudicate Samul's claim that the trial court neglected to inform him of his right to appeal and of the time period in which to do so. We therefore remand for the trial court to hold an evidentiary hearing and resolve this claim. Accordingly, we affirm, except for the limited remand for the trial court to consider whether Samul was adequately informed of his appeal rights.

―――――