**2013 UT App 12**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,

*Plaintiff and Appellee,*

*v.*

MOHAMED DAFFALLA KABOR,

*Defendant and Appellant.*

Opinion
No. 20110187-CA
Filed January 17, 2013

Third District, Salt Lake Department
The Honorable Judith S.H. Atherton
No. 071904828

Debra M. Nelson, Attorney for Appellant
John E. Swallow and John J. Nielsen, Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion,
in which JUDGES WILLIAM A. THORNE JR.
and J. FREDERIC VOROS JR. concurred.

ROTH, Judge:

¶1     Mohamed Daffalla Kabor appeals from the denial of his motion to reinstate his right to appeal. We affirm.

BACKGROUND

¶2     On November 19, 2008, Kabor was convicted of murder, obstruction of justice, and three counts of discharging a firearm

from his vehicle. He was sentenced on January 23, 2009, to the statutory prison terms on each count with the sentences for murder and obstruction of justice to run consecutively to each other and the sentences for the firearm offenses to run concurrently with each other and with the other two sentences. Following sentencing, the district court failed to notify Kabor of his right to appeal as required by rule 22(c) of the Utah Rules of Criminal Procedure.

¶3     Kabor filed a notice of appeal on April 10, 2009, seventy-seven days after sentencing. Apparently recognizing that his notice of appeal was untimely, Kabor subsequently filed a motion and supporting memorandum to reinstate his time to file an appeal under rule 4(f) of the Utah Rules of Appellate Procedure. *See generally* Utah R. App. P. 4(f) (permitting a defendant to move to reinstate the right to direct appeal under certain circumstances and establishing the procedure for doing so). Kabor asserted that reinstatement was appropriate because he was unconstitutionally denied the right to appeal by the court's failure to comply with rule 22(c). The State filed a response to Kabor's motion and requested a hearing.

¶4     At the hearing, Kabor testified in his own behalf. He reported that immediately after trial he informed his trial counsel, Bradley Rich, that he wanted to appeal. According to Kabor, Rich discouraged an appeal because his "chances aren't good." Kabor reported that he nevertheless continued to insist on an appeal and reiterated his desire to appeal when Rich visited him at the jail prior to sentencing, although he did not repeat this request to Rich or the court at the sentencing hearing itself. Kabor further explained that while he was aware generally of his right to appeal, he was never informed by the court or by Rich of the thirty-day window for doing so. Kabor testified that he first became aware of the thirty-day time period from a discussion with his cellmate on March 18, 2009, about sixty days after sentencing. The cellmate incorrectly informed him that he needed to have his notice of appeal notarized, which caused further delay in his filing the notice.

¶5     The only other witness at the motion hearing was Kabor's attorney, Rich, who testified that he spoke with Kabor a number of times regarding his right to appeal his convictions. Rich explained that he first spoke with Kabor about the possibility of appeal while the jury was deliberating during the November 2008 trial.[1] Specifically, he testified that he told Kabor that, if convicted, Kabor would be sentenced "six or eight weeks down the road. . . . And after that, if he chose to do so, he could appeal, but his rights to appeal wouldn't mature until after the date of sentencing." Rich next addressed the appeal right with Kabor about a week before the date set for sentencing, in a letter explaining the appeal process. The letter stated,

> As I previously told you[,] following your sentencing, you will have the right to appeal. I confine my practice to criminal defense trial work and do not do appeals. If you or your family desire to have somebody in our office handle that, I will put you in touch with Liz Hunt, who does our appellate work. . . . If you and your family cannot afford counsel, I believe that the judge will appoint you an excellent public defender to pursue that appeal if you desire. We would need to make that request to the judge the day of your sentencing. Let me know what your desire is in advance of sentencing.
>
> Sadly, I do not see obvious grounds for appeal that ha[ve] any likelihood of being successful but it is certainly your right to do that if you choose.

---

[1]Rich testified that he had explained the interlocutory appeal process to Kabor after his motion to suppress was denied. Because this appeal deals with Kabor's right to appeal the final judgment and convictions, we discuss only the testimony relevant to that issue.

The letter was dated January 16, 2009, but Rich could not remember if he mailed the letter or hand-delivered it when he visited Kabor at the jail prior to the January 23 sentencing. At that meeting, Rich discussed "whether or not [Kabor] wanted to appeal and whether or not he would be able to hire counsel." Rich explained to him that an appeal had to be filed within thirty days of sentencing and informed him that "since there was only 30 days, . . . if he wanted Legal Defender[s] to be appointed, we would need to address that at the time of sentencing . . . to get appointed counsel within the mandated 30 days and get [counsel] up to speed to file the appropriate paperwork during the time." Kabor "didn't express any interest in doing an appeal and told [Rich] that he didn't want to appeal or he was thinking he didn't want to appeal." Rich left the meeting with a "distinct impression" that Kabor would not appeal but told Kabor to give him a final decision at sentencing.

¶6      On January 23, just before sentencing, Rich discussed the possibility of an appeal with Kabor one last time. He again explained that an attorney could be appointed if Kabor could not afford to pay private counsel. When Rich asked Kabor if he wanted to have an attorney appointed to pursue an appeal, Kabor said that he did not intend to appeal and therefore did not want an attorney appointed. Following sentencing, Kabor did not say anything to Rich that indicated that he had changed his mind about appealing.

¶7      The district court found "Rich['s testimony] to be credible and the testimony of . . . Kabor not to be credible." Specifically, the court found that Rich informed Kabor that he had to file an appeal within thirty days of sentencing and that Kabor told Rich that he "did not want to appeal." Because it found that Kabor did not file a timely appeal despite being informed by Rich of both his right to appeal and the time frame in which that right must be exercised, the court concluded that Kabor had not shown by a preponderance of the evidence that he had been constitutionally deprived of an opportunity to appeal. As a result, the court denied Kabor's motion to reinstate the time for appeal. Kabor now appeals from the denial of that motion.

ISSUE AND STANDARDS OF REVIEW

¶8     Kabor contends that the district court wrongly denied his motion to reinstate the appeal period under rule 4(f) of the Utah Rules of Appellate Procedure and *Manning v. State*, 2005 UT 61, 122 P.3d 628. We review the court's legal conclusion that Kabor was not unconstitutionally deprived of his right to appeal for correctness but give deference to its underlying factual findings, meaning that we will not overturn them unless they are clearly erroneous. *See State v. Hales*, 2007 UT 14, ¶ 35, 152 P.3d 321 (explaining that a claim that the defendant's due process rights had been violated is "a mixed question of fact and law that we review de novo for correctness" while "incorporat[ing] a clearly erroneous standard for the necessary subsidiary factual determinations" (footnote citations and internal quotation marks omitted)).

ANALYSIS

¶9     Kabor challenges the district court's decision on three grounds. First, he asserts that under *Manning* and rule 4(f), he was entitled to reinstatement of his appeal right because the district court failed to advise him of his right to file an appeal following his sentencing. Second, he contends that if his counsel's advice regarding the appeal right can rectify the court's failure to advise him, then that advice must be given on the record. Finally, Kabor argues that even if counsel's off-the-record statements could qualify as advice of his right to appeal, those explanations were too unclear to satisfy the notification requirements. We address each argument in turn.

I. Kabor Failed To Meet His Burden of Establishing that He Did Not Knowingly and Voluntarily Waive His Right to Appeal.

¶10     According to Kabor, he is entitled to reinstatement of the appeal period under the rationale of *Manning* and rule 4(f) of the Utah Rules of Appellate Procedure. In *Manning*, the supreme court

addressed the circumstances under which a defendant may be unconstitutionally deprived of his or her right to an appeal and the appropriate process for seeking reinstatement of the right to appeal after the appeal period has expired. Rule 4(f) "was adopted to implement the holding and procedure outlined in *Manning*" for seeking reinstatement of the appeal period. Utah R. App. P. 4 advisory committee note. The rule, however, sets forth only the procedure for requesting a reinstatement of the right to appeal and does not address the circumstances that would justify reinstatement. Utah R. App. P. 4(f). Accordingly, we apply the analysis described in *Manning* to decide whether Kabor's request was properly denied.

¶11    A defendant is entitled to reinstatement of his direct appeal right if he "has been prevented in some meaningful way from proceeding with a first appeal of right." *Manning*, 2005 UT 61, ¶ 26 (citation and internal quotation marks omitted); *accord* Utah R. App. P. 4(f). A defendant has not been meaningfully deprived of his appeal right, however, if he voluntarily waived that right, and we presume that a defendant has knowingly and voluntarily waived the right to appeal whenever he fails to file a timely notice of appeal, *see Manning*, 2005 UT 61, ¶¶ 35, 1. Accordingly, the burden is on the defendant to establish, by a preponderance of the evidence, that he did not waive that right but was "unconstitutionally deprived, through no fault of his own, of his right to appeal." *Id.* ¶¶ 18, 31–32; *accord* Utah R. App. P. 4(f) ("If the trial court finds by a preponderance of the evidence that the defendant has demonstrated that he was deprived of his right to appeal, it shall enter an order reinstating the time for appeal."). *Manning* describes some of the circumstances that support a defendant's claim that a waiver was not knowing or voluntary, including, for example, where

> (1) the defendant asked his or her attorney to file an appeal but the attorney, after agreeing to file, failed to do so; (2) the defendant diligently but futilely attempted to appeal within the statutory time frame

without fault on defendant's part; or (3) the court or the defendant's attorney failed to properly advise defendant of the right to appeal.[2]

2005 UT 61, ¶ 31 (citations omitted).

¶12   Kabor asserts that he is entitled to reinstatement under the third exception because the court failed to advise him of his right to appeal.[3] It is undisputed that the district court failed to notify Kabor of his appeal right once he had been sentenced, as required by rule 22(c) of the Utah Rules of Criminal Procedure. *See* Utah R. Crim. P. 22(c)(1) ("Following imposition of sentence, the court shall advise the defendant of defendant's right to appeal and the time within which any appeal shall be filed."). The district court concluded, however, that despite this, Kabor was appropriately informed of his right to appeal by trial counsel. We agree.

¶13   It is worth emphasizing at the outset that rule 22(c) mandates that the district court notify a defendant of his appeal right following the imposition of sentence because it is the most reliable way to ensure that defendants are made aware of the important constitutional right to appeal a conviction or sentence. The United

---

[2]Our supreme court has indicated that these three circumstances are "distilled . . . from our case law and a survey of those relied on in other jurisdictions" but are "not intended to be [the] exclusive" bases for demonstrating an unconstitutional deprivation of an appeal right. *Manning v. State*, 2005 UT 61, ¶ 31 n.11, 122 P.3d 628. Kabor has not asserted any other circumstance that indicates a deprivation of his constitutional right to appeal.

[3]In the district court, Kabor alleged that Rich's failure to file an appeal after he was requested to do so was an alternative basis for reinstatement. Kabor has not pursued that claim on appeal.

States Supreme Court has identified the benefits of such an approach:

> It will often be the case that, as soon as sentence is imposed, the defendant will be taken into custody and transported elsewhere, making it difficult for the defendant to maintain contact with his attorney. The relationship between the defendant and the attorney may also be strained after sentencing, in any event, because of the defendant's disappointment over the outcome of the case or the terms of the sentence. The attorney, moreover, concentrating on other matters, may fail to tell the defendant of the right to appeal, though months later the attorney may think that he in fact gave the advice because it was standard practice to do so. In addition, if the defendant is advised of the right by the judge who imposes sentence, the defendant will realize that the appeal may be taken as of right and without affront to the trial judge, who may later rule upon a motion to modify or reduce the sentence. Advising the defendant of his right at sentencing also gives him a clear opportunity to announce his intention to appeal . . . .

*Peguero v. United States*, 526 U.S. 23, 26–27 (1999) (citation omitted).

¶14    The court's "failure to comply with the formal requirements of the Rule," however, does not automatically entitle a defendant to reinstatement of the right to appeal. *See id.* at 27–28 (citation and internal quotation marks omitted). Rather, under *Manning*, the reinstatement inquiry focuses more broadly on whether the defendant's failure to file an appeal was a voluntary and knowing choice. *See Manning v. State*, 2005 UT 61, ¶¶ 31–32, 122 P.3d 628. Thus, evidence that the court failed to advise a defendant of his appeal right following sentencing undermines the presumption that his failure to appeal was knowing and voluntary, while evidence that the defendant was actually made aware of his right to appeal, despite the court's oversight, can support a conclusion

that he was not unconstitutionally deprived of the right to appeal. *See, e.g., Peguero*, 526 U.S. at 27–28 (explaining that the petitioner was not entitled to habeas relief even though the court failed to notify him of his right to appeal because his own testimony showed that he had actual knowledge of the right prior to the expiration of the appeal period and the petitioner did not identify any other resulting prejudice); *Johnson v. State*, 2006 UT 21, ¶ 26, 134 P.3d 1133 (remanding for consideration of whether the defendant was unconstitutionally deprived of his right to appeal where the defendant was not present at trial or sentencing and "nothing in the record before [the supreme court] indicate[d] whether Johnson was otherwise notified of his right to appeal"); *Hauck v. State*, 2007 WY 113, ¶ 10, 162 P.3d 512 (concluding, in the context of determining whether the defendant's petition for postconviction relief was procedurally barred for failing to raise the claims on direct appeal, that the defendant had been deprived of his constitutional right to appeal because the court failed to advise him of that right *and* the "record does not otherwise reflect that [the defendant] knew of his right to appeal" his conviction).

¶15    In this case, the evidence the district court found credible indicated that Kabor's attorney, Bradley Rich, discussed an appeal with him on several occasions and, in the course of those discussions, made him aware of both his right to appeal and the time frame in which that right must be exercised. In addition, Rich advised Kabor that he would need to make a decision by the time of sentencing so that Rich could request the appointment of a public defender, if necessary, to pursue the appeal. During these discussions, Kabor either expressed no interest in filing an appeal or indicated his intent not to appeal, and he never asked Rich to request that the court appoint appellate counsel to represent him. Based on this testimony, the district court determined that Kabor failed to overcome the *Manning* presumption that his failure to file was knowing and voluntary both because he had actual knowledge of the right to appeal and the time period for doing so and because he indicated no interest in an appeal in the course of pertinent discussions with his attorney, affirmatively stating that he did not

want to appeal during counsel's last discussion with him just before sentencing. *See generally Peguero*, 526 U.S. at 28 (explaining that where "petitioner had full knowledge of his right to appeal, . . . the District Court's . . . fail[ure] to inform him of that right did not prejudice him"). The district court further concluded that none of the circumstances identified in *Manning* as indications of an involuntary waiver were present.

¶16    Kabor argues, however, that the court's failure to advise him of his appeal right fell within the third exception—"the court or the defendant's attorney failed to properly advise defendant of the right to appeal," *Manning*, 2005 UT 61, ¶ 31. In support of his argument, Kabor relies on a single sentence in *Manning*, in which the supreme court states, "[T]he court's failure to comply with rule 22(c) may well qualify for the third exception where a defendant claimed that his right to appeal his sentence has been denied." *Id.* ¶ 41. We recognize that the supreme court's statement, in isolation, leaves open the possibility that the district court's failure alone might, in some circumstances, be enough to demonstrate unconstitutional deprivation. The supreme court, however, couched the exception itself in the alternative, i.e., the failure of "the court *or* the defendant's attorney . . . to properly advise defendant of the right to appeal." *Id.* ¶ 31 (emphasis added). The word "or" strongly suggests that if either the court or defense counsel provided the advice regarding appeal, then there is no constitutional deprivation. *Cf. Calhoun v. State Farm Mut. Auto Ins. Co.*, 2004 UT 56, ¶ 20, 96 P.3d 916 ("The legislature's separation of these two [statutory] sections by the disjunctive 'or' as opposed to the conjunctive 'and' clearly mandates that a policy need only provide owner's coverage or operator's coverage—not both.").

¶17    This interpretation comports with the supreme court's own explanation of the application of the third exception: "The third exception applies where the court *and* the defendant's attorney have failed to provide the defendant with notice of the right to appeal." *Manning*, 2005 UT 61, ¶ 40 (emphasis added). In the context of this explanation of the scope of the exception, the

supreme court's statement that "the [sentencing] court's failure to comply with rule 22(c) may well qualify for the third exception," *id.* ¶ 41, is not inconsistent with its instruction that the third exception applies only when "the court *and* the defendant's attorney have failed to provide" the defendant with notice of the right to appeal, *id.* ¶ 40 (emphasis added). For, under *Manning*, the crux of the reinstatement inquiry is whether the defendant was unconstitutionally deprived of his right to appeal. If the court fails to notify the defendant and it appears that he was not otherwise informed, then "the court's failure to comply with rule 22(c) may well qualify for the third exception." *Id.* ¶ 41. But when it is apparent that the defendant was actually aware of his right to appeal because he was advised by his counsel—as was the case here—the third exception does not apply. Moreover, the district court found that Kabor told Rich that he did not want to appeal, a circumstance that strongly supports the conclusion that the sentencing court's failure to notify Kabor that he could appeal did not deprive him of a constitutional right.

## II. There Is No Requirement that Counsel's Advice Be On the Record.

¶18    Kabor next asserts that there is "no record evidence" that Rich informed him of the right to appeal. According to Kabor, Rich had to inform him on the record of the right to appeal, and in the absence of such an on-the-record communication, he urges us to assume that no notification occurred because appellate courts generally indulge a presumption against waiver of a constitutional right. (Citing *Manning*, 2005 UT 61, ¶ 35.) Kabor cites *City of Seattle v. Braggs*, 705 P.2d 303 (Wash. Ct. App. 1985), in support of his contention. There, the Washington Court of Appeals stated that "compelling or extraordinary circumstances" would justify extending the time to appeal and that where the record does not "clearly indicate that the trial court advised the defendant . . . of the right to appeal a conviction as well as the time and method for commencing an appeal," such compelling circumstances will be found. *Id.* at 305–06. *Braggs*, however, does not address the issue

asserted by Kabor—that substitute notice must be on the record—but instead adopts the position rejected by our supreme court in *Manning*—that the court's failure to advise a defendant of his right to appeal, without more, automatically entitles him to reinstatement of the appeal period.

¶19    Kabor does not provide any other legal authority for his contention that the notice by counsel must be on the record. Rather, his arguments identify policy reasons as a basis for adopting such a rule. For example, Kabor cites the concern noted in *Peguero v. United States*, 526 U.S. 23 (1999), that counsel may not actually have informed a defendant of the right to appeal, even though counsel believes that he or she did so because that was the usual practice. *See id.* at 26–27. He also identifies a concern that counsel's explanation of the appeal right and process may not be as thorough as the court's advice and that the contents of such explanation are not independently verifiable. But the Utah Supreme Court did not identify in *Manning* any "on the record" requirement for determining whether a defendant has been unconstitutionally deprived of his appeal right, 2005 UT 61, ¶¶ 31, 35–41, nor did it include any such requirement in rule 4(f), Utah R. App. P. 4(f). To the contrary, *Manning* expressly refers to an evidentiary hearing as one means for determining whether a defendant has been deprived of his or her right to appeal. 2005, UT 61, ¶ 31. We therefore reject Kabor's contention that Rich's advice could not appropriately inform him of his right to appeal simply because it was off the record.

### III. Counsel's Explanations Were Not Unduly Confusing or Unclear.

¶20    Kabor also claims, apparently in the alternative, that Rich's explanations of the right to appeal were too confusing and unclear to comply with the requirements of due process. In particular, Kabor argues that Rich's piecemeal explanation of the appeal process, when considered in the context of his relative youth and the emotional burden of facing the possibility of spending the rest of his life in prison, supports an inference that he could not be

expected to fully comprehend Rich's explanation of the right to appeal. But the rule itself requires that the district court "advise the defendant of defendant's right to appeal and the time within which any appeal shall be filed" right after imposition of sentence, Utah R. Crim. P. 22(c), and Kabor has not explained how the emotional burden on a defendant would be materially different in those circumstances than in the context of a similar explanation by counsel just before sentencing or in the weeks leading up to sentencing. Indeed, the potential for emotional distraction might well be greater following announcement of sentence. Further, the rule itself makes no distinction based on relative age. As the State points out, Rich's explanations conveyed the realities of serving a prison sentence and impressed upon Kabor the urgency to make a decision about an appeal by the time of sentencing. He did this by explaining the appeal process early and often and repeatedly gauging Kabor's receptiveness to pursuing an appeal. Accordingly, we also reject Kabor's contention that Rich's explanations were too unclear or complicated to constitute adequate notice.

CONCLUSION

¶21     Utah law presumes that a defendant who fails to file a timely appeal has knowingly and voluntarily waived his right to appeal. The district court found that Kabor's attorney adequately advised him of his right to appeal even though the court failed to do so. Kabor has not convinced us that counsel's advice was inadequate because the notification was not on the record or because it was unclear or confusing. In addition, the court found that Kabor had affirmatively stated to his attorney that he did not intend to appeal his convictions. Kabor has therefore failed to carry his burden to overcome the presumption that his failure to timely file a notice of appeal was the result of a knowing and voluntary waiver of his right to appeal. In this regard, the district court did not err in concluding that Kabor was not unconstitutionally deprived of his right to appeal when he was notified of that right by his trial counsel but not by the district court. We therefore

uphold the denial of Kabor's motion to reinstate the time for appeal.

¶22    Affirmed.

————————————