2025 UT App 166

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
NICHOLAS EZEKIEL HEMBREE,
Appellant.

Opinion
No. 20230888-CA
Filed November 13, 2025

Eighth District Court, Vernal Department
The Honorable Edwin T. Peterson
No. 191800398

Ramon Ortiz, Debra M. Nelson, Benjamin Miller, and
Wendy M. Brown, Attorneys for Appellant

Derek E. Brown and Emily Sopp,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and AMY J. OLIVER
concurred.

HARRIS, Judge:

¶1     After being charged in two separate cases with 56 different crimes—most of which were felony charges accusing him of illicit sexual conduct involving young girls—Nicholas Ezekiel Hembree entered into a plea agreement with the State: he agreed to plead to six counts, including four felonies (two of which were first-degree), and the State agreed to dismiss the other 50. Hembree filed no motion to withdraw his plea prior to sentencing. And later, the district court sentenced Hembree to concurrent prison terms of six years to life on the two first-degree felonies and ordered that the sentences on the other counts run concurrently

with those. Hembree did not file a notice of appeal within thirty days of his sentencing.

¶2      Instead, more than a year after sentencing and after a failed pro se motion to withdraw his plea, Hembree filed a motion asking the court to reinstate his time to file an appeal of his *sentence*, asserting that he had not been informed of his right to do so. The district court denied that motion, and Hembree now challenges that denial on appeal. For the reasons discussed, we affirm the court's denial of the motion Hembree filed.

¶3      But Hembree also raises another issue, one that he acknowledges is unpreserved for our review. He points out that, during the pendency of this appeal, our supreme court decided *State v. Rippey*, 2024 UT 45, a case in which it declared unconstitutional certain portions of Utah's Plea Withdrawal Statute (the PWS). He asserts that *Rippey* represents a "landscape shift" that he contends evidenced a "deprivation" of his right to appeal his *convictions*, and on that alternative basis he asks us to reinstate his right to appeal. But there are insurmountable procedural problems with this request and, for the reasons discussed, we decline Hembree's invitation; we note, however, that Hembree remains free to file a second motion in the district court asking for reinstatement of the time to appeal.

BACKGROUND

¶4      In 2019, the State filed two criminal cases against Hembree. In the first case, the State charged Hembree with six crimes, four of which were misdemeanors, related to an incident in which Hembree and four minors allegedly broke into a hotel room and damaged property.

¶5      The second case was much more significant: in that one, the State charged Hembree with 50 crimes, all of which were felony sex offenses. In the most serious counts, the State accused

Hembree of molesting two thirteen-year-old girls; the charges associated with those incidents included rape of a child, object rape of a child, and aggravated sexual abuse of a child, all first-degree felonies. In addition, officers searched Hembree's phone and found nude photographs of one of the girls, as well as more than 300 other images of child pornography; related to this, the State charged Hembree with 40 counts of sexual exploitation of a minor, all second-degree felonies.

¶6 As the cases proceeded toward trial, Hembree and the State entered into plea negotiations, and they eventually reached an agreement. In the first case, Hembree agreed to plead guilty to two class A misdemeanors, one for criminal trespass and the other for criminal mischief, and the State agreed to dismiss the other four counts. And in the second case, Hembree agreed to plead "guilty and mentally ill" to two counts of first-degree-felony aggravated sexual abuse of a child, as well as to two amended counts of third-degree-felony attempted sexual exploitation of a minor. In exchange, the State agreed to dismiss all remaining counts, including five first-degree-felony sex crime charges and at least 38 second-degree-felony child pornography charges. In the written statement memorializing the plea agreement, Hembree admitted, among other things, that he "had sexual intercourse with a thirteen year old female on two separate occasions," that he "penetrated another thirteen year old female's vagina with a vibrator and his fingers," and that his phone contained not only "three nude depictions" of one of the thirteen-year-old girls but also "345 images of child pornography." And that same plea form—which Hembree signed—advised him that if he wished to appeal his sentence, he "must file a notice of appeal within 30 days after [his] sentence [was] entered."

¶7 At the change-of-plea hearing, the court conducted a plea colloquy with Hembree, and at the start of that discussion, it asked Hembree whether he was "under the influence" of "medications" or "anything that would cause [him] not to understand the discussion." Hembree responded by stating, "Not

really . . . ." The trial judge—who by that point had been presiding over Hembree's case for about two years—then made "a record" that, in his view, Hembree appeared as "capable" as the court had ever seen him. The court also told Hembree that because he had chosen to plead guilty, he was "giving up pretty much all rights to an appeal because there would be nothing to appeal," and that he would "only have the right to ask to withdraw [his] plea up until the time sentence was pronounced" and that after that he "couldn't even ask." During that same discussion, Hembree acknowledged that he had gone over the plea agreement form "line-by-line" with his attorney. At the conclusion of the hearing, the court accepted Hembree's change of plea.

¶8    Later, the court held a sentencing hearing, and the court and the attorneys discussed the fact that the presumptive sentence on the felony counts was fifteen years to life but that the court could deviate downward and impose a lesser sentence of ten or even six years to life. The court and the attorneys also discussed the fact that Hembree had pled "guilty but mentally ill" to some of the counts and that he had struggled with mental health issues. Against this backdrop, the court sentenced Hembree to concurrent prison sentences of six years to life on the two first-degree felonies, based on his plea of "guilty but mentally ill . . . and the fact that [he had already] been incarcerated for an extended period of time." With this sentence, the court also "enter[ed]" its "strongest recommendations . . . that [Hembree] be placed in a mental health program . . . and that [he] receive some treatment." The court clarified that those two prison sentences were to run concurrently with each other and that the sentences on the lesser charges were to run concurrently with the sentences for the first-degree felonies. At the end of the sentencing hearing, the court wished Hembree "[g]ood luck," but it made no mention of Hembree's right to appeal his sentence.

¶9    A little over three months after sentencing, Hembree filed a handwritten pro se motion to withdraw his guilty plea. In his motion, he claimed that at the time he entered his change of plea,

he had not been in the right mindset due to medication clouding his judgment, and he asserted that because he was no longer taking that medication, he was now in the right mindset and wanted to take his case to trial. The court denied Hembree's motion, stating that a "request to withdraw a guilty plea must be made prior to sentencing."

¶10 About a month later, the attorney who had been representing Hembree (Plea Counsel) filed a motion to withdraw. In this motion, Plea Counsel certified, pursuant to rule 36(b)(2) of the Utah Rules of Criminal Procedure, that she had advised Hembree "of the right to appeal." The certification did not specify when this advice had been given.

¶11 The following year, some fourteen months after sentencing, Hembree's new counsel (Appellate Counsel) filed a motion (the Reinstatement Motion) asking the district court to reinstate the period within which Hembree could file a direct appeal of his sentence. In the Reinstatement Motion, Hembree asserted that neither the court nor Plea Counsel had properly advised him of his right to appeal his sentence, and he asserted that, as a result, he had been "unconstitutionally den[ied] . . . his right to appeal." Hembree acknowledged Plea Counsel's certification that she had "advised him of his right to appeal," but he asserted that this certification indicated only that the "advisory" had been given "months after the time for appeal had expired." And Hembree asserted that his "intent to appeal," had he been properly advised, was "clear from the record," as evidenced by, among other things, his post-sentencing pro se motion to withdraw his plea.

¶12 The State opposed the Reinstatement Motion, asserting that Hembree had been "informed of his right to appeal his sentence by both the [c]ourt" and Plea Counsel. In addition, the State took issue with Hembree's assertion that the record demonstrated an intent on Hembree's part to appeal his sentence, offering its view that Hembree had received "the lightest possible

sentence he could have received under the law" and therefore had no incentive to appeal his sentence.

¶13 The court scheduled the matter for oral argument, and just days before the scheduled hearing, Appellate Counsel filed a declaration in which he asserted that he had spoken with Hembree and that Hembree had told him, among other things, that Plea Counsel had not met with him "in the weeks before or after his sentencing to discuss potential outcomes or options," that Plea Counsel "did not notify him about the right to appeal his sentence in the weeks preceding the sentencing hearing or within the 30 days available to appeal," and that Hembree and Plea Counsel "did not speak after sentencing." Appellate Counsel also averred that Hembree had told him that if he had "been aware of his appellate rights, he would have initiated a timely appeal."

¶14 At oral argument, the court observed that Hembree had been "advised of his right to appeal when he pled." And the court offered its view that, at sentencing, it had "pronounced the minimal sentence for these charges available under the law" and that there was no "lesser penalty" that the court could have imposed. Indeed, the court went so far as to state that any appeal of Hembree's sentence would be "a waste of time and effort" and a "waste of judicial resources" because even if he won the appeal, he'd just get a new sentencing hearing at which the court would have to "pronounce the same sentence again because it's the lightest sentence available." And at the conclusion of the hearing, the court found that Plea Counsel had "file[d] a document with the [c]ourt saying she had advised [Hembree] of his rights,"[1] and

---

1. The court also made a finding that "*at sentencing* [Hembree] was advised of his rights and acknowledged the right to appeal his sentence 30 days after it was entered." (Emphasis added.) Hembree challenges this finding as clearly erroneous and unsupported by evidence, and the State concedes the point. The court did not advise Hembree, during the sentencing hearing, of his right to appeal, and our opinion takes this into account.

it found "by a preponderance of the evidence that [Hembree] knew of his rights to appeal based upon giving . . . weight to the individuals that ha[d] produced statements before the [c]ourt." Accordingly, the court denied the Reinstatement Motion.

¶15   Within thirty days of the court's order denying that motion, Hembree filed a notice of appeal, indicating that he was challenging "the denial of his motion to reinstate the period for filing a direct appeal" of his sentence. A few months later, Hembree filed his opening brief on appeal. Several months after that—while the appeal was still pending, and before the State had filed its responsive brief—our supreme court issued its decision in *State v. Rippey*, 2024 UT 45. In that opinion, the court held that certain provisions of the PWS "violate[d] the separation of powers required by the Utah Constitution" and that those provisions could therefore not operate to bar defendants from challenging their guilty pleas on direct appeal. *Id.* ¶¶ 2, 48–51. However, the court concluded that its "normal rules of preservation and waiver apply" to such appeals, and that therefore a defendant who makes no attempt to withdraw a plea "in the district court in a way that the district court had the opportunity to rule on it" would have failed to properly preserve a challenge to the plea for appellate review, and that in such cases "the defendant will need to show that an exception to preservation applies." *Id.* ¶¶ 48–49.

¶16   Following the issuance of the *Rippey* decision, and before filing his reply brief on appeal, Hembree asked us to "permit supplemental briefing" on the question of whether *Rippey* constituted a "deprivation of appellate rights" pursuant to rule 4(f) of the Utah Rules of Appellate Procedure and could therefore constitute "an additional ground for reversing" the court's order denying the Reinstatement Motion. The State opposed this motion, and we eventually issued an order denying the motion to the extent it sought "wholesale supplemental briefing." We noted, however, that "nothing in [the] order should be construed as preventing [Hembree], at his option, from discussing the *Rippey* issue in his reply brief," but we also stated that if Hembree chose

to do so, the State would "be afforded the opportunity to file a sur-reply brief." Thereafter, Hembree filed a reply brief that included argument regarding the *Rippey* issue, and the State filed a sur-reply brief a few weeks later.

## ISSUES AND STANDARDS OF REVIEW

¶17    In this appeal, Hembree presents two issues for our review. First, he challenges the denial of the Reinstatement Motion, in which he sought an order reinstating the time within which he could mount a direct appeal of his *sentence*. "We review [a district] court's legal conclusion that [a defendant] was not unconstitutionally deprived of his [or her] right to appeal for correctness but give deference to its underlying factual findings, meaning that we will not overturn them unless they are clearly erroneous." *State v. Kabor*, 2013 UT App 12, ¶ 8, 295 P.3d 193.

¶18    Second, Hembree asserts that *Rippey*'s "landscape shift" constitutes a circumstance by which he was, through no fault of his own, deprived of an opportunity to mount a direct appeal of his *convictions*. He acknowledges that this legal theory was never brought to the attention of the district court and that it is therefore unpreserved for our review on appeal. But he asks us to conclude that "exceptional circumstances" justify our review of this unpreserved issue. Whether such circumstances exist is a question that, by definition, arises in the first instance on appeal, and it is therefore a question of law. *See State v. Kozlov*, 2012 UT App 114, ¶ 28, 276 P.3d 1207 (explaining that an exceptional circumstances claim "presents a legal question that we review for correctness").

## ANALYSIS

¶19    As a general matter, parties have a right to a direct appeal, so long as they file a notice of appeal "within 30 days after the date of entry of the judgment." Utah R. App. P. 4(a). However, "[t]here is an exception for criminal defendants . . . to the general rule that

requires the timely filing of a notice of appeal." *State v. Collins*, 2014 UT 61, ¶ 23, 342 P.3d 789. This exception was originally articulated in *Manning v. State*, 2005 UT 61, 122 P.3d 628, but is now codified in our rules of appellate procedure, which provide (in relevant part) as follows: "The trial court will reinstate the 30 day period for filing a direct appeal in a criminal case if a defendant demonstrates by a preponderance of the evidence that the defendant was deprived of the right to appeal through no fault of the defendant." Utah R. App. P. 4(f)(1).

¶20    In *Manning*, our supreme court held that a district court "may reinstate the time frame for filing a direct appeal where the defendant can prove, based on facts in the record or determined through additional evidentiary hearings, that [the defendant] has been unconstitutionally deprived, through no fault of his [or her] own, of [the] right to appeal." 2005 UT 61, ¶ 31. And although rule 4(f) now controls, *Manning* still informs our understanding of the rule. *See State v. Brown*, 2021 UT 11, ¶ 16, 489 P.3d 152 ("[W]hile *Manning* no longer supplies a valid procedural basis for accessing the right to appeal separate and apart from rule 4(f), it does inform the discussion of what rule 4(f) means . . . ."). In *Manning*, the court described three circumstances in which a defendant might be considered to have been deprived of the right to appeal through no fault of his or her own:

> (1) the defendant asked his or her attorney to file an appeal but the attorney, after agreeing to file, failed to do so; (2) the defendant diligently but futilely attempted to appeal within the statutory time frame without fault on defendant's part; or (3) the court or the defendant's attorney failed to properly advise defendant of the right to appeal.

2005 UT 61, ¶ 31 (cleaned up). This list was not intended to be exhaustive; indeed, the court stated that the "circumstances" in which these principles apply "would include" the three identified scenarios. *Id.*

¶21 In this case, Hembree's appeal has two aspects. In the first part, he challenges the district court's denial of the Reinstatement Motion, in which he invoked the third *Manning* scenario and asserted that he had not been properly advised of his right to appeal his sentence. And in the second part, he invokes *Rippey* and asserts that our supreme court's issuance of that decision constituted a circumstance—not specifically listed in *Manning*—by which he was, through no fault of his own, deprived of an opportunity to mount a direct appeal of his convictions. We address these two parts of Hembree's appeal, in turn.

## I. The Reinstatement Motion: Appeal of the Sentence

¶22 First, Hembree challenges the denial of the motion he actually filed. Here, he invokes the third *Manning* scenario, and he claims that neither Plea Counsel nor the district court advised him of his right to appeal his sentence. Individuals "relying on the third *Manning* scenario must show: (1) that neither the court nor counsel properly advised them of their right to appeal, and (2) that 'but for' this failure they would have filed an appeal." *State v. Collins*, 2014 UT 61, ¶ 29, 342 P.3d 789.

¶23 The district court denied the Reinstatement Motion, specifically finding that Hembree was advised of his right to appeal and strongly implying that Hembree had so little to gain from any potential appeal that Hembree wouldn't have appealed in any event. Hembree now challenges the court's determinations, but we find Hembree's arguments largely unpersuasive.

## A. Advisement of the Right to Appeal

¶24 Our rules of criminal procedure require that defendants be advised—at two different points in the process—of the right to appeal. First, when a defendant enters a guilty plea, the court must find that "the defendant has been advised that the right of appeal is limited." *See* Utah R. Crim. P. 11(e)(8). In this case, Hembree was so advised: in the plea statement he signed, he was

informed that he had the right to appeal his sentence within thirty days, and at the change-of-plea hearing, the court advised Hembree that his right to appeal was limited.[2]

¶25    Second, our rules require district courts, at the time of sentencing, to "advise the defendant of defendant's right to appeal, the time within which any appeal must be filed and the right to retain counsel or have counsel appointed by the court if indigent." *See id.* R. 22(c)(1). At the sentencing hearing, the court did not give any such advice to Hembree. *See supra* ¶¶ 8 & 14 n.1. But Plea Counsel later certified that she had advised Hembree "of the right to appeal," although in the certification she did not specify when this advice had been given. Plea Counsel's averment was contradicted by information in Appellate Counsel's later-filed affidavit, in which he stated that Hembree told him, among other things, that Plea Counsel "did not notify him about the right to appeal his sentence in the weeks preceding the sentencing hearing or within the 30 days available to appeal."

¶26    From this evidence, the court made a factual finding "by [a] preponderance of the evidence that [Hembree] knew of his right to appeal based upon weight given by individuals that ha[d] produced statements before the court." As already noted, we must give "deference" to this finding and will overturn it only if it is "clearly erroneous." *State v. Kabor*, 2013 UT App 12, ¶ 8, 295 P.3d 193. A district court's finding is clearly erroneous if it is "either against the clear weight of the evidence or [it] . . . induce[s]

_____

2. As Hembree points out, the court's advice in this regard was arguably too energetic. The court told Hembree that, because he had chosen to plead guilty, he was "giving up pretty much all rights to an appeal because there would be nothing to appeal." While sentencing appeals are undoubtedly difficult, it is an overstatement to say that a defendant who pleads guilty gives up "pretty much all rights to an appeal." But here, given our resolution of the issues in the case, the district court's perhaps overzealous advice in this regard did not prejudice Hembree.

a definite and firm conviction that a mistake has been made." *Lundahl Farms LLC v. Nielsen*, 2021 UT App 146, ¶ 40, 504 P.3d 735 (cleaned up). And in this setting, "[t]he pill that is hard for many appellants to swallow is that if there is evidence supporting a finding, absent a legal problem—a 'fatal flaw'—with that evidence, the finding will stand, even though there is ample record evidence that would have supported contrary findings." *Kimball v. Kimball*, 2009 UT App 233, ¶ 20 n.5, 217 P.3d 733.

¶27　Here, there is record evidence supporting the district court's finding: Plea Counsel's certification attesting that she advised Hembree of his right to appeal his sentence. In this situation, the court's failure to so advise Hembree at sentencing was not prejudicial. *See State v. Collins*, 2014 UT 61, ¶ 25, 342 P.3d 789 ("[A] court's failure to fully comply with rule 22(c)(1) will not necessarily result in a deprivation of the defendant's right to appeal because the defendant's attorney may independently inform the defendant of the right.").

¶28　Hembree pushes back against reliance on Plea Counsel's certification by making two good points: that advice given at the time of the plea should not count in this context, because if it did, then rule 22(c)(1)'s requirement that a defendant be advised at the time of sentencing would be diluted; and that Plea Counsel did not specify exactly when she advised Hembree of his right to appeal his sentence. But even assuming the validity of these two points, the court's finding is nevertheless supported by evidence in the record and reasonable inferences drawn therefrom.

¶29　We agree with the State that it is reasonable to infer, from Plea Counsel's certification, that she advised Hembree of his right to appeal within the time frame for mounting that appeal. Indeed, as the State indicates, "the withdrawal certifications" would have been "pointless otherwise." Those certifications were made pursuant to rule 36(b)(2) of the Utah Rules of Criminal Procedure, which requires attorneys withdrawing from representation in a criminal case "after entry of judgment" to certify not only that

their client had, prior to withdrawal, "been advised of the right to appeal," but also that, if the filing of such an appeal was "in counsel's opinion . . . appropriate," the required notice of appeal and related documents had been filed. In context, this rule requires that the advice about appellate rights be given in time to mount the appeal in question. And the district court was well within its discretion to infer here that Plea Counsel, by making the certification, had done just that.

¶30    To be sure, evidence existed that points in the other direction, most notably Appellate Counsel's affidavit containing the secondhand assertion that Plea Counsel had in fact *not* advised Hembree of his right to appeal. But where conflicting evidence exists, a factfinder may exercise its discretion to weigh the evidence in the manner it finds appropriate. And here, the district court's finding that Hembree had been properly and timely advised of his right to appeal is supported by the record and is therefore not clearly erroneous. Hembree's challenge to the district court's order denying the Reinstatement Motion is therefore infirm on this ground alone.

B.    Whether Hembree Would Have Appealed

¶31    But in any event, Hembree's challenge fails on the second element too. In our view, the district court made an implied finding that Hembree would not have appealed his sentence even if he had been properly advised of his right to do so. And such a finding enjoys ample support in the record.

¶32    During the hearing on the Reinstatement Motion, the court indicated that, at sentencing, it had "pronounced the minimal sentence for the[] charges available under the law" and that "there [was] not a lesser penalty that [the court] could pronounce," and from those statements, the court reasoned that any appeal would have been "a waste of time and effort" because even if Hembree won his appeal, what he'd win would be a remand to the district court just to have the court "pronounce the same sentence again."

Hembree criticizes the court for making these comments, asserting that the merits of a potential appeal are immaterial to the question of whether the time for mounting an appeal should be reinstated. Hembree's assertions are correct as a technical matter: the elements of the reinstatement-of-time-to-appeal test do not include examination of the potential appeal's merits. *See State v. Collins*, 2014 UT 61, ¶ 29, 342 P.3d 789 (setting forth the two-part test); *cf. Roe v. Flores-Ortega*, 528 U.S. 470, 486 (2000) ("[I]t is unfair to *require* an indigent, perhaps pro se, defendant to demonstrate that [a] hypothetical appeal might have had merit before any advocate has ever reviewed the record in his [or her] case in search of potentially meritorious grounds for appeal."). A court should not deny a *Manning*/rule 4(f) motion simply because it believes that the potential appeal would be meritless.

¶33    But while the merits of the potential appeal are not *directly* relevant, the question of how much a defendant stands to gain (or potentially lose) from a prospective appeal is a critical part of the second step of the rule 4(f) test: whether the defendant would have chosen to file an appeal had the defendant been properly advised of the right to do so. In this context, questions about whether the plea deal was favorable, and whether the sentence imposed was lenient, are relevant factors that can be considered in assessing whether a defendant would have appealed. *See, e.g., State v. Blanke*, 2023 UT App 113, ¶ 20, 537 P.3d 654 (noting that the defendant had "pled guilty pursuant to a favorable plea agreement" that allowed him to resolve two cases at once, and concluding that, in that situation, "there would have been no reason for [him] to consider timely appealing his sentence" and that "[d]oing so would have run counter to his interests").

¶34    Our review of the record leads us to conclude that it was in this context—and not as an untethered review of the merits—that the court was assessing the worth of Hembree's potential appeal. In particular, the court's statement that the appeal would be a "waste of time and effort" was not a criticism of the merits of any such appeal because, in making those comments, the court was

implicitly assuming that Hembree would *win* the appeal. The court's point, as we understand it, was simply that even if Hembree won the appeal, he wouldn't have gained anything because an order vacating the lenient sentence would award Hembree nothing more than a new sentencing hearing at which the court would likely impose the exact same sentence. In this context, the court's implied finding that neither Hembree nor a reasonable person in his situation[3] would have filed an appeal, even if proper advice about the right to appeal had been given, was not clearly erroneous and was amply supported by the facts in the record, even if some evidence (for instance, the fact that Hembree had filed a pro se post-sentence motion to withdraw his plea) pointed in the other direction.

¶35    For all of these reasons, then, we affirm the district court's order denying the Reinstatement Motion, which was the only motion that Hembree actually filed and which was limited to discussion of a potential appeal of Hembree's *sentence*.

---

3. Our cases have discussed the relevant standard in different ways. *Compare State v. Przybycien*, 2023 UT App 153, ¶ 43, 541 P.3d 288 (using a seemingly objective test when stating "for these reasons, we cannot say that, under the circumstances of this case, a rational defendant would have wanted to appeal the sentence [the defendant] received" (cleaned up)), *with State v. Blanke*, 2023 UT App 113, ¶ 18, 537 P.3d 654 (employing a subjective test when stating "[r]ather, our supreme court has clarified that a defendant in [his] position must carry the burden of proof that he would have appealed his sentence if properly informed of his right to do so"). In this case, however, the standard is not determinative; as we understand the district court's sentiments, it believed that neither Hembree nor a reasonable person in Hembree's position would have appealed this particular sentence.

II. The Unfiled *Rippey* Motion: Appeal of the Convictions

¶36    Second, Hembree argues, on an alternative basis, that a "landscape shift" occurred when our supreme court issued its decision in *State v. Rippey*, 2024 UT 45, an event he characterizes as evidence of a "deprivation" of his right to appeal his *convictions*. From this, Hembree asks us to reinstate his right to appeal, which appeal would potentially include challenges not only to his sentence but also to his convictions. Hembree acknowledges that this issue is unpreserved for appellate review—that is, Hembree did not ever ask the district court to reinstate his time for appeal on this basis, and the court had no opportunity to make a ruling on this issue. *See State v. Florez*, 2020 UT App 76, ¶ 17 n.3, 465 P.3d 307 (stating that "the main point of our preservation rules is to afford a [district] court the opportunity to rule on a disputed issue"). Hembree nevertheless asserts that this situation involves "exceptional circumstances" under which we can and should review this unpreserved issue. But we disagree, and for the reasons explained, we decline to reach the merits of Hembree's alternative argument.

¶37    Ordinarily, we do not decide issues that are unpreserved for our review on appeal. *See State v. Johnson*, 2017 UT 76, ¶ 18, 416 P.3d 443 ("A failure to preserve an issue in the [district] court generally precludes a party from arguing that issue in an appellate court, absent a valid exception."). But there are three recognized exceptions to our preservation requirement: plain error, ineffective assistance of counsel, and exceptional circumstances. *Id.* ¶ 19. "When an issue is not preserved in the [district] court, but a party seeks to raise it on appeal, the party must establish the applicability of one of these exceptions to persuade an appellate court to reach that issue." *Id.*

¶38    Here, Hembree attempts to invoke the third listed exception, the one reserved for "exceptional circumstances." *Id.* This exception is "often invoked but rarely applied." *State v. Dowhaniuk*, 2025 UT App 100, ¶ 19, 574 P.3d 1000. Indeed, we

apply it only "where a rare procedural anomaly has either prevented an appellant from preserving an issue or excuses a failure to do so." *State v. Van Huizen*, 2019 UT 01, ¶ 22, 435 P.3d 202 (cleaned up); *see also Johnson*, 2017 UT 76, ¶ 29 (stating that the "exceptional circumstances doctrine is applied sparingly" and is reserved "for the most unusual circumstances where our failure to consider an issue that was not properly preserved for appeal would . . . result[] in manifest injustice" (cleaned up)). Only if such a rare procedural anomaly exists does the door open "to a deeper inquiry" in which "additional factors must be considered to determine whether an appellate court should reach an unpreserved issue." *Johnson*, 2017 UT 76, ¶ 29. Those factors include "(a) whether the failure to address an unpreserved issue would result in manifest injustice, (b) whether there is a significant constitutional right or liberty interest at stake, and (c) judicial economy." *Kelly v. Timber Lakes Prop. Owners Ass'n*, 2022 UT App 23, ¶ 21 n.3, 507 P.3d 357 (cleaned up).

¶39    Here, Hembree asserts that the issuance of the *Rippey* opinion in the midst of this appeal constitutes a rare "procedural anomaly" that qualifies as an exceptional circumstance that excuses his failure to ask the district court to reinstate the time within which he could appeal his convictions. He points out that, at the time he filed the Reinstatement Motion, he was legally and jurisdictionally barred from challenging his underlying guilty plea and associated convictions, and that he gained the ability to do so only after issuance of the *Rippey* decision. As he puts it, "because the change in law came after" he filed the Reinstatement Motion and after the court made its decision on that motion, he "could not have raised" his alternative claim before the district court at the time he filed the Reinstatement Motion.

¶40    For the purposes of our analysis, we will assume—without deciding—that the issuance of the *Rippey* decision constituted the sort of rare procedural anomaly that might open the door to the deeper inquiry under the exceptional circumstances doctrine. But even indulging this assumption, after undergoing the deeper

inquiry we nevertheless decline to review the merits of Hembree's alternative claim in this appeal, because in our view Hembree remains free, even after disposition of this appeal, to file a new *Manning* motion in the district court, and given the type of analysis that motion requires, it is best if that motion is adjudicated in the first instance in that court.

¶41    First, we see nothing in applicable rules or caselaw that would prevent a defendant from filing more than one *Manning* motion, at least as long as the previous motions are denied. For fairly obvious reasons, as soon as any such motion is successful, a defendant wins reinstatement of the right to initiate a direct appeal in the case, and litigants get only one shot at a direct appeal. Accordingly, if a defendant is successful in filing a *Manning* motion and instituting a reinstated direct appeal, that defendant may not later file another similar motion. But if a defendant's *Manning* motion is denied, and no direct appeal has ever been filed, then we see no reason why a defendant could not file a second *Manning* motion, assuming of course that new grounds have arisen that, for whatever reason, could not have been raised or included in the first motion.

¶42    Certainly, nothing in rule 4(f) forbids the filing of multiple *Manning* motions. *See generally* Utah R. App. P. 4(f). The rule does require that any such motion "be filed within one year, or within a reasonable time, whichever is later, from the day on which the defendant personally knew, or should have known in the exercise of reasonable diligence, of evidentiary facts forming the basis of the claim that the defendant was deprived of the right to appeal." *Id.* R. 4(f)(2). But because multiple grounds may exist upon which such motions may be filed, a defendant could conceivably discover, at different times, different reasons for the deprivation of the defendant's appellate rights. And if we indulge the assumption, for purposes of our analysis, that the issuance of a law-changing appellate opinion could constitute a rule 4(f) deprivation circumstance, that would be an instance in which a

defendant might justifiably not discover, until the issuance of that opinion, that the defendant has a right to mount an appeal.

¶43    And we think that *that* issue, along with the rest of the *Manning*/rule 4(f) analysis, should be decided by the district court in the first instance after full and complete briefing. As already noted, in this appeal Hembree raised the relevant legal question—whether *Rippey*'s issuance constituted a rule 4(f) deprivation circumstance—for the first time in his reply brief. Because we allowed the State to file a sur-reply memorandum, we have the benefit of the State's response to Hembree's argument, and the State raises some interesting points. But we do not have the benefit of Hembree's reply to those arguments, and if the issue were decided in the district court in the first instance, we would not only have the benefit of full briefing from the parties but also the benefit of the district court's thinking on the matter. *See Kay v. Barnes Bullets*, 2022 UT 3, ¶ 20, 506 P.3d 530 (declining to address a legal question in the first instance "without the benefit of full briefing on the subject").

¶44    But even more concerning to us is the notion of deciding the *second* part of the relevant test in the first instance. Hembree's argument does not directly invoke the third *Manning* scenario, but his argument strikes us as a variant of it: he asserts that, given the state of the law at the time, he did not know and could not have known that he had the right to appeal his convictions. And defendants asserting that they were unaware of their right to appeal must—to obtain relief on a *Manning* motion—demonstrate that they would have appealed if they had been aware of their right to do so. *See State v. Collins*, 2014 UT 61, ¶ 30, 342 P.3d 789 ("Implicit in this [deprivation] requirement is the recognition that where a defendant would not have appealed anyway, there is no deprivation of the right to appeal and any error affecting that right would be harmless."); *see also State v. Blanke*, 2023 UT App 113, ¶ 16, 537 P.3d 654 (stating that a defendant must show "that an appeal would have been taken had the defendant been properly informed of the right"). In this specific context, that would require

Hembree to demonstrate that, if he had known that he was not procedurally barred from appealing his convictions following his plea, he would have actually mounted such an appeal.

¶45 And as discussed in the previous section, a determination about whether a defendant would have appealed had that defendant been properly informed of the right to do so involves a question upon which a district court must make a factual finding. *See State v. Bluemel*, 2023 UT App 142, ¶ 33 & n.7, 540 P.3d 756 (characterizing a district court's determination on the second *Manning* factor as a "finding," and remanding because the court's findings on that point were inadequate). Indeed, this inquiry often involves assessment of witnesses' credibility. *See Collins*, 2014 UT 61, ¶ 57. Such findings are reviewed deferentially; we will overturn them only if they are clearly erroneous. *See State v. Kabor*, 2013 UT App 12, ¶ 8, 295 P.3d 193. And we are understandably reluctant to decide, in the first instance, questions on which we would apply a deferential standard on regular appellate review. *See State v. Dowhaniuk*, 2025 UT App 100, ¶ 31, 574 P.3d 1000 (declining a litigant's invitation to undertake, in the first instance, an inquiry that "should ordinarily be made in the first instance by the district court," and noting our general reluctance to do so). We are likely to do so only when the answer to the question is "clear enough to remove it from the district court's purview as a matter of law." *Id.*

¶46 In this case, it is far from obvious that Hembree would have appealed his convictions, even if *Rippey* had been decided at the time he had to make his decision. The holding in *Rippey* is actually quite narrow: parts of the PWS are unconstitutional, but the "normal rules of preservation and waiver" otherwise apply. *See* 2024 UT 45, ¶ 48. Thus, while a defendant is no longer jurisdictionally barred from challenging an entered plea, such a challenge is not without restrictions: the defendant must still make a motion to withdraw that plea before sentencing in order to preserve the issue for appellate review. *See id.* ¶ 49 (stating that, "[i]n practice," the *Rippey* decision "means that whether a

defendant may challenge a guilty plea on direct appeal will depend on whether [the defendant] attempted to withdraw that plea in the district court in a way that the district court had the opportunity to rule on it"); *see also State v. Fretwell*, 2025 UT App 96, ¶ 4, 574 P.3d 526 (per curiam) (stating that a district court lacks jurisdiction to consider a defendant's post-judgment motion to withdraw a plea), *petition for cert. filed*, Aug. 26, 2025 (No. 20250983). If a defendant fails to make a timely motion to withdraw a plea, that defendant is no longer—after *Rippey*—jurisdictionally barred from challenging that plea on direct appeal, but in that instance the defendant's challenge must come through one of the exceptions to our preservation requirement. *See Rippey*, 2024 UT 45, ¶ 49.

¶47 In this case, Hembree made a pro se motion to withdraw his plea, but not until *after* his sentence had been entered. The court denied Hembree's motion, stating that a "request to withdraw a guilty plea must be made prior to sentencing." Thus, any challenge that Hembree might make, on direct appeal, to the convictions that resulted from his pleas will be unpreserved, and that challenge will therefore need to be routed through one of the exceptions to our preservation requirement, the most common of which is the one for ineffective assistance of counsel. Thus, in assessing whether Hembree would have appealed his convictions had he known about *Rippey*, a court will likely need to examine whether Hembree would have mounted an ineffective-assistance challenge to the entry of his plea.

¶48 And on these facts, we do not think it "clear enough" that Hembree would have mounted such a challenge. *See Dowhaniuk*, 2025 UT App 100, ¶ 31. As already noted, Hembree received a plea deal that, on its face, appears quite favorable to him: he was charged with 56 counts, including 50 felony sex offenses, but pled to only six of them, four of which were felonies. The State agreed to dismiss the other 50 counts. It is certainly conceivable that, after assessing the situation, the district court could make a supported factual finding that Hembree would not have challenged this

particular plea deal in a direct appeal in which he was limited to raising an ineffective assistance claim. *See Blanke*, 2023 UT App 113, ¶ 20 (noting that the defendant had "pled guilty pursuant to a favorable plea agreement," and concluding that under the circumstances "there would have been no reason for [him] to consider timely appealing his sentence"); *see also State v. Przybycien*, 2023 UT App 153, ¶ 43, 541 P.3d 288 (rejecting an ineffective assistance claim in a similar context because, under the circumstances of that case, "a rational defendant would [not] have wanted to appeal the sentence [the defendant] received" (cleaned up)). At a minimum, we must leave any such determination "for the district court to [make] in the first instance," *Dowhaniuk*, 2025 UT App 100, ¶ 31, which decision we would review deferentially in any eventual appeal.

¶49   For all of these reasons, we decline Hembree's invitation to apply the exceptional circumstances doctrine and reach the merits of his unpreserved issues. These issues should be determined by the district court in the first instance, and in this situation those issues can be timely brought before that court.[4]

CONCLUSION

¶50   We perceive no error in the district court's order denying the Reinstatement Motion. The court's factual findings—that

---

4. Not only do we perceive no categorical bar, in either rule 4(f) or in *Manning*, to the filing of a second motion to reinstate the time for filing a direct appeal, but in this situation Hembree still has time within which to file such a motion. The rule requires that any such motion be filed "within one year, or within a reasonable time," from the day on which Hembree learned of the basis for his claim. Utah R. App. P. 4(f)(2). Our supreme court issued its decision in *Rippey* on December 27, 2024, meaning that there is still time within the one-year post-*Rippey* period for Hembree to file a second *Manning* motion based on *Rippey*.

Hembree had been advised of the right to appeal his sentence and that he would not have done so in any event—are supported by the record. We therefore affirm the denial of that motion.

¶51     And we do not reach the merits of Hembree's unpreserved issue, because exceptional circumstances for doing so do not exist here, where the relevant issues should be decided in the first instance by the district court after full briefing and where those issues can still be timely brought to the attention of that court.

_____